<div align="right">NEW-YORK,
May 1830.

Hollister
v.
Johnson.</div>

---

## HOLLISTER *vs.* JOHNSON.

It is the duty of a *constable* to whom an execution is delivered, in all cases, to *search for property* before he takes the body of the defendant.

If, without searching or inquiring for property, he immediately, upon receiving the execution, arrests the defendants, *he does it at his peril;* and if it be shewn that the defendant has property in his open and visible possession which was subject to the execution, and might with reasonable diligence have been found by the officer, he is liable to an action for the arrest.

*It seems* that *trespass* in such a case might be sustained.

It is erroneous in a judge to instruct a jury that they may indulge a presumption not warranted by the evidence disclosed in the case.

A constable has in all cases a reasonable time to search for property before he is bound to arrest the defendant in an execution; and if he acts in good faith, he will incur no responsibility in omitting to take the body until such search can be made. If the defendant declares he has no property, the arrest may be made immediately.

THIS was an action for false imprisonment.

The defendant, as a *constable,* committee the plaintiff to jail on a justice's execution for $41,79, where he remained five days. The plaintiff proved that, at the time of his commitment, he was a house-keeper, having a family, in the county where the judgment was rendered, and occupied a farm at a rent of $60 per annum, of which he had been in possession for three years; that he was possessed of two colts worth $40, a waggon worth $25, and household furniture of considerable value over and above what by law was exempted from execution. The suit in which the execution issued was commenced by *warrant,* which was served on the same day that the execution issued. At the time of the service of the warrant, the plaintiff told the defendant he had property enough to pay all his debts, but did not point out .

NEW-YORK, May, 1830.

Hollister.
v.
Johnson.

any property to the defendant. He further told him that he intended to pay his debts before he went away, and he requested the defendant to let him be until Monday, the day on which the arrest took place being Saturday. This the defendant declined, and carried him before the justice who issued the warrant, a distance of ten miles from the residence of the plaintiff. When brought before the justice, the plaintiff confessed judgment and consented to the issuing of the execution, and said that he had before offered to turn out property, but now would do nothing about it. Whilst the justice was making out the execution, the plaintiff escaped. The defendant in this cause (the constable) and the plaintiff in the execution pursued and arrested him at the distance of half a mile from the justice's office. It was late on Saturday night when the execution issued, near bed time; the justice's office was about 12 miles south from the jail, and the plaintiff resided six miles east of the jail. The plaintiff in the execution testified that the plaintiff in this suit was reputed insolvent; that he was informed he was about to clear out for the west; and considering his debt in danger, he swore out the warrant. It appeared that the farm on which the plaintiff in this suit resided laid on the line of the state of Vermont, and that part of it was in that state, and that after his discharge from the execution he did move to the west.

The defendant insisted that the action should have been *case* and not *trespass*, and on that ground moved for a nonsuit. The circuit judge reserved the question, and charged the jury that if it was doubtful whether there was property sufficient to satisfy the execution, the defendant was justified in taking the body of the plaintiff; that to render the defendant liable in this action, there must have been a reasonable probability of there being property enough to satisfy the execution; that the circumstance of the plaintiff's being about to go to the west, and the property which he offered to turn out not being pointed out, went far in justification of the defendant; that the fact of the plaintiff's having property was not conclusive evidence that the execution might be satisfied, for it appeared that the premises were leased, and it might reasonably be presumed that the landlord had a claim for rent,

which might have defeated the execution: and that if the NEW-YORK,
defendant had not taken the body of the plaintiff, and it had May. 1830.
turned out that he had not sufficient property to satisfy the Hollister
execution, the defendant would have been liable. The plain- v.
tiff excepted to the charge, and the jury found a verdict for Johnson.
the defendant.

*J. Crary*, for the plaintiff, cited 2 Johns. Cas. 50 ; 4 Cranch,
404.

*G. W. Jermain*, for defendant, insisted that the declaration
of the plaintiff that he would do nothing about turning out
property in satisfaction of the judgment must be considered
as a voluntary surrender of his person in execution, es-
pecially as the plaintiff did not require the defendant to pro-
ceed against his property.   If, under circumstances like
those disclosed by this case, the party is bound to seek satis-
faction against the goods, the provision of the statute author-
izing an execution to be issued on oath of danger, &c. would
be useless.

*By the Court*, SUTHERLAND, J.   It is the duty of the con-
stable to whom an execution is delivered in all cases to search
for property to satisfy it before he takes the person of the de-
fendant.   The form of the execution clearly indicates his du-
ty in this respect ; it commands him " to levy the debt or
damages and costs of the goods and chattels of the defendant,
&c, *and if no goods and chattels* can be found, *then* to take
the body of the defendant," &c;   (Laws of 1824, p. 286, §
14.   Waterman's Manual, 86.)   His right to take the body
depends upon the contingency of there being no property to
be found.   If, without searching or inquiring for property,
he immediately upon receiving the execution arrests the de-
fendant, he does it at his peril ; and if it is shewn that the de-
fendant had property in his open and visible possession,
which was subject to the execution, and might, with reason-
able diligence, have been found by the officer, he is undoubt-
edly liable to an action for making the arrest.   Whether the
action should be *case* or *trespass*, it is not necessary to de-
cide, as the point, though raised upon the trial, seems to have

been abandoned upon the argument; though I see no sub-
stantial objection to an action of *trespass* in s  h a case.   The
constable does not obey, but violates the authority under
which he acts, if he makes an arrest without searching or in-
quiring for property.   Whether there was property or not
upon which a levy might have been made is matter *in pais*,
to be shewn by evidence; and whenever it is shewn, the au-
thority for the arrest is disproved, and the constable is left
without justification as a wilful trespasser.

The charge of the judge appears to me to have been
wrong in two essential particulars: 1. In stating to the jury
that it might reasonably be *presumed* that the landlord of the
plaintiff had a claim or lien on the property which was shewn
to have been in his possession for rent, which might have de-
feated the execution; and 2. In stating to them that if the
defendant had not taken the body of the plaintiff, and it had
turned out that he had not sufficient property to satisfy the
execution, he (the defendant) would have been liable for the
amount of the execution.   Now, there is not a particle of ev-
idence in the case upon the subject of rent, except the sim-
ple fact that the plaintiff lived on a farm for which he was to
pay or had paid $60 per annum.   No claim on the part of
the landlord was shewn, nor any other circumstance from
which an inference could be drawn that there was any rent
in arrear; and unless such presumption exists in judgment
of law in all cases between landlord and tenant, there was no
foundation for it in this.

A constable has in all cases a reasonable time to search
for property before he is bound to arrest the defendant in the
execution; and if he acts in good faith, he will incur no re-
sponsibility in omitting to take the body until such search can
be made.   This necessarily follows from what has already
been said as to the duty of the constable under the execution.

There may be cases in which no actual search is necessa-
ry.   Where the defendant in the execution declares that he
has *no property*, he has no right to complain if the constable
credits his assertion and proceeds accordingly.   But that was
not the case here; the plaintiff, when he was arrested upon
the warrant, informed the defendant that he had property

enough to pay all his debts, and that he intended to pay them, and requested hⁱ to delay the arrest or suspend proceedings until the following Monday, this being on Saturday ; but the defendant having refused to do this, and having taken the plaintiff 12 or 14 miles from home, before the magistrate who issued the process, he then said that he had before offered to turn out property, but now he would do nothing about it. This, so far from authorizing the defendant to conclude that he had no property, was substantially an assertion that he had, but that he intended to leave the officer to do his duty in the ordinary way. Indeed, the plaintiff had no opportunity to turn out property if he had been so inclined ; the execution did not issue till near bed time, as the witness expressed it, on Saturday night, and the plaintiff was then 12 or 14 miles from home, where his property was.

