# SUPPLEMENT.

## DECISIONS OF GILCHRIST, J.,

### FROM JANUARY TERM, 1845, TO JULY TERM, 1847.*

#### FITTS v. BROWN.

The admissions of a party making them are not, in general, conclusive against him, except in favor of such as have been induced to act upon such admissions.

Evidence of a party's admission is not admissible to vary the effect of a written contract.

TROVER, for two cows, driven by the defendant from the farm where the plaintiff lived, on the 22d day of March, 1841.

The plaintiff, to prove property, introduced an indenture, made on the first day of September, 1824, between himself and Daniel Fitts, reciting, among other things, that Daniel had, for certain considerations, conveyed to the plaintiff the farm referred to, and that the plaintiff had given to Daniel and his wife a lease of it for their lives and the life of the survivor, together with a bond for their support, and for other objects. The indenture then pro-

vided, that the plaintiff might occupy and enjoy certain privileges connected with the farm, and that Daniel should "find stock to stock the farm," &c. It further provided that the plaintiff should deliver and "bring into the house so much of the produce of said farm as shall be necessary" for the support of Daniel and his wife, &c., "and the overplus to go to the said Ebenezer Fitts, for his own use."

The defendant offered in evidence a bill of sale of the two cows, executed by Daniel Fitts on the 26th day of September, A. D. 1838, to his daughter Sally, who became the wife of the defendant in the month of June, A. D. 1839. The bill of sale included also other stock upon the farm, but was offered by the defendant for no other purpose than to show that Daniel Fitts conveyed the cows to his daughter Sally.

Daniel Fitts died in January, A. D. 1841, but Hannah, his wife, is still living. One of the cows descended from a heifer which was owned by him at the time the indenture was executed, and which remained upon the farm afterwards. The other cow was obtained by Daniel Fitts when it was a calf, by exchanging for it a calf which also descended from the heifer above mentioned ; and the cows always remained upon the place until driven away by the defendant. The exchange was made by Sally Fitts, by direction of Daniel Fitts. The plaintiff and Daniel Fitts lived on the farm together, and in one family.

The court instructed the jury that, by the terms of the indenture, Daniel Fitts was bound to stock the farm, and that the stock, when placed by him on the farm in pursuance of the agreement, became so far the property of the plaintiff that Daniel Fitts could not sell them ; that the young animals raised upon the farm from them were to be considered part of the produce and income of the farm from which the support of Daniel Fitts and his wife was to be derived: That the surplus, after furnishing them with their support, belonged to the plaintiff; that such

part of the produce and stock as remained at the decease of Daniel would belong to the plaintiff, and that Daniel Fitts could not convey any title to the cows to Sally, his daughter, by the bill of sale aforesaid.

The defendant read in evidence the deposition of Hannah Fitts, who testified as follows: "After my husband conveyed to Ebenezer his real estate, in 1824, Ebenezer tried to have him convey to him his stock also, but he refused to do it."

The defendant also offered evidence, that on the day of the annual meeting, in March, 1841, one of the plaintiff's creditors asked him to pay him his debt, but he said he could not. He then asked him if the stock on the place did not belong to him, and he said no; he had not any stock. The witness then inquired if he could let him have a cow, and the plaintiff said he had none. He then asked him if the cows on the place were not his, and the plaintiff answered no.

The plaintiff was proved to have taken the poor debtors' oath, in October, 1836.

The court instructed the jury that this testimony was admissible only as tending to show that, subsequent to the date of the indenture, the plaintiff and Daniel Fitts might have made another contract, whereby the property in the stock became vested in Daniel, and that if they believed such a contract was made they should find for the defendant.

The jury found for the plaintiff, and the defendant moved to set aside the verdict on account of the instructions of the court, as aforesaid.

*Pillsbury*, for the defendant.

*Bell* and *Tuck*, for the plaintiff.

GILCHRIST, J. By the terms of the contract between Daniel Fitts and the plaintiff, Ebenezer Fitts, the latter

was to occupy the farm, and to have all the produce except so much as should be necessary for the support of Daniel and his wife, which the plaintiff had agreed to deliver and bring into the house for them.

Daniel was to stock the farm, and did stock it; and from one of the animals furnished for that purpose is descended one of the cows which are the subject of this controversy, while the other was derived by the exchange of a calf of the same stock, made by the agency of Daniel and Sally acting under his direction. The exchange was made when both the animals were calves, and was acquiesced in by the plaintiff, by adopting the new acquisition, and raising it with the other animals upon the farm.

Upon this state of the evidence the court instructed the jury that the stock, when furnished by Daniel, and placed upon the farm pursuant to the agreement, became so far the property of the plaintiff that Daniel Fitts could not sell it, and " that the young animals raised from it upon the farm were to be considered part of its produce and income, from which the support of Daniel and his wife was to be derived; and that the surplus, after furnishing such support, belonged to the plaintiff."

We are of the opinion that it would be difficult to give any other rational construction to the contract. A very large portion of the agriculture of the country is devoted to the growth of various kinds of cattle, which are as justly and as uniformly regarded as the produce of the farm, as are the corn, hay, and roots with which they are fed. Upon any other principle of construction in such a case as this, conflicts might arise between the adverse interests of the tenant and landlord, which it would be difficult to adjust upon satisfactory grounds. One party might require all the resources of the farm to be devoted to the growth and increase of stock for the fertilizing of the soil, and the more direct emolument of the owner, while the obvious motives of the other would tend in an

opposite direction. It would be but an illusory provision for a party occupying the position of the plaintiff in this case, to give him the surplus crops of the farm, if a large portion of that surplus could be claimed by the landlord for the increase of stock for his own benefit. It seems, therefore, quite plain to us, that by the produce of the farm are included not only the crops, but such animals as, coming into existence upon the farm, are brought to maturity by the pains and care of the tenant, and fed by crops which are indisputably his. *Turner* v. *Bachelder*, 6 Shep. 257; *Butterfield* v. *Baker*, 5 Pick. 522.

To rebut this inference, evidence of the sayings of the plaintiff was introduced, and an exception was taken to the ruling of the court as to its admissibility.

In general, the admissions of a party are evidence against him, and sometimes they are conclusive in their effect; as where they are made upon the record, where they operate by way of estoppel. Sometimes when not of record they have the effect of precluding the party making them from disputing them, as where others have been induced by them to act otherwise than they would have done but for such admissions. *Welland Canal* v. *Hathaway*, 8 Wend. 483; *Davis* v. *Sanders*, 11 N. H. 259; *Tufts* v. *Hayes*, 5 N. H. 453.

In the case last referred to, which was trespass against a sheriff for taking the plaintiff's cow, it appeared that the plaintiff had made declarations that he owned another cow then in his possession; and it was held that the declarations must have been made under such circumstances as to give the defendant a right to consider both cows as his property, and as to make a denial of the declarations in the action inconsistent with good faith and honest conduct, in order to estop the plaintiff, and that the mere fact that he made them was insufficient for that purpose.

In another case, the plaintiff advanced £7,500 to one Knight, who, as collateral security, gave him an order on

the defendants for some malt. They acknowledged in writing that they held the malt on account of the plaintiff, and Lord *Ellenborough* held them estopped as against the plaintiff from denying that they so held it. *Stonard* v. *Dankin,* 2 Camp. 344.

The same principle is affirmed in many cases: *Hallesten* v. *Johnson,* 4 Wend. 642; *Wallis* v. *Truesdell,* 6 Pick. 455; *Deniger* v. *Sauzer,* 6 Wend. 436, 437; *Davison* v. *Franklin,* 1 B. & Ad. 142; *Hall* v. *White,* 3 C. & P. 136; *Champlin* v. *Butler,* 18 Johns. 169.

But the estoppel, or disability to show the truth against the admission, prevails only in favor of the party who has been drawn in by the act, or admission, and cannot be availed of by strangers, or such as could not have been imposed on.

Thus the plea of *nolo contendere* does not estop the party from disputing, in a civil action, the truth of the facts charged in the indictment. *Commonwealth* v. *Horton,* 9 Pick. 206.

The certificate of A. that he had purchased a vessel of B. was held not to conclude A. in a suit drawing the sale in question, but that A. might show an agreement at the time that a bill of sale was to be executed in order to complete the purchase. *Higgins* v. *Cheseman,* 9 Pick. 7. The same principle is asserted in *Stone* v. *Swift,* 4 Pick. 489.

And where the admissions of the plaintiff were not made with a view to influence the conduct of the defendants, and did not in fact influence it, and they did not act upon such admissions, the plaintiff is not estopped. *Wallis* v. *Truesdell,* 6 Pick. 457.

The admissions of the plaintiff in this case do not fall within the definition of any that have been held to be conclusive of his rights in the matters to which they relate.

It is equally clear, upon reason and authority, that they are not admissible for the purpose of controlling the effect of the written contract between the parties. Their admis-

sion would conflict with that established rule of evidence which precludes the use of parol testimony for such purpose. Its effect, moreover, would be only to show the. party's misapprehension of his rights under the contract— a subject upon which he might well be mistaken without prejudice to those rights. 1 Gr. Ev., sec. 95; *Moore* v. *Hitchcock*, 4 Wend. 492; *Boston Hat Man. Co.* v. *Messinger*, 2 Pick. 240.

The effect which could lawfully have been given to the evidence appears to us to have been stated by the court with a latitude sufficiently favorable to the defendant. *Austin* v. *Sawyer*, 9 Cow. 39.

There must, therefore, be

*Judgment on the verdict.*