HENRY WHITE, Appellant, v. SAMUEL ASHTON, impleaded, etc., Respondent.

An estoppel *in pais* can only be founded upon an assent to or admission of some fact, or the doing of some act. A promise to act is insufficient, and the doctrine cannot be invoked to subvert the principle that prior or cotemporaneous agreements are absorbed in a written contract.

Defendants contracted to transport a quantity of barley for plaintiff from Albany to Baltimore, to be delivered in good order, "the dangers of the seas alone excepted." There were two customary or usual routes—one the inside or canal route, the other the outside or ocean route. Defendants' vessel took the latter, and the barley was injured by a peril of the seas. In an action to recover the damages, plaintiff offered to prove in substance, that defendants, before signing the bill of lading, knowing that plaintiff designed to effect an insurance, and that it was necessary for that purpose to designate the route, agreed to transport the barley by the inside route; that relying upon such agreement he caused the barley to be insured by that route, and in consequence of the taking of the other route lost his insurance and suffered the damage claimed. The evidence was objected to and excluded. *Held*, no error; that by the contract defendants had the choice of routes, and it was not competent to vary it by parol, nor was the evidence competent by way of estoppel.

Authorities upon the subject of estoppel *in pais* collated.

(Argued September 19, 1872 ; decided January Term, 1873.)

APPEAL by defendant Ashton from order of the General Term of the Supreme Court in the third judicial district, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial.

This action was brought against defendants, Aaron Van Kirk and Samuel Ashton, as common carriers, for injury to a cargo of barley shipped from Albany to Baltimore.

The complaint alleged, among other things, that the defendants, as common carriers, received from the plaintiff one thousand bushels of barley to be transported on their schooner from Albany to Baltimore, by the inland or canal route, at a freight of six cents per bushel, and that the plaintiff caused the barley to be insured for the voyage; that the defendants failed to transport the barley by the inland or canal route, but

transported the same by the ocean or outward route, and so carelessly loaded the schooner that they wet and injured the barley to the amount of $490, by means whereof the plaintiff lost his insurance and is damaged to that amount.

Plaintiff gave in evidence a bill of lading in writing, in the words following viz. :

" Shipped in good order and well conditioned, by John G. White, on board the good schooner called the Benj. Browning, of Camden, N. J., whereof A. Van Kirk is master for this present voyage, now in the harbor of Albany and bound for Baltimore, to say :

" One thousand bushels barley malt, being marked and numbered as on the margin, and are to be delivered in like good order, at the port of Baltimore, as aforesaid (the dangers of the seas alone excepted), unto Henry White, Esq., or to his assigns ; he or they paying freight for the said malt six cents per bushel, with accustomed primage and average.

" In witness whereof, the master of said vessel has affirmed to one bill of lading of this tenor and date, and one of which being accomplished, the others will stand void.

                                  " AARON VAN KIRK.
" Dated at Albany, April 14, 1854."

The plaintiff further proved by the person from whom he bought the barley, and who shipped it to him, that when the schooner was ready to load he sent for Van Kirk, the master, told him he wanted his name and the name of his schooner, that he might write to the plaintiff to effect an insurance on the barley before it left Albany. The captain gave him the information desired, and said that his vessel was an inside vessel, that her route was through the canals, and that he had never been outside with her. This information was communicated to the plaintiff.

The plaintiff then offered to prove by the same witness that, when about ready to start, the following occurrence took place: The master (Van Kirk) " remarked that he wanted an advance on the freight. I asked him how much. He

replied, enough to pay canal tolls. I made a cast on the Delaware and Raritan canal, and asked him what the charges were on the Delaware and Chesapeake canal. He replied that they were about as much as on the Delaware and Raritan, both of which I found to amount to about fifty dollars. I then told him what the amount would be, and asked him if he thought that would be enough. He said, he thought it would. I then gave him the fifty dollars, and charged him with it on the bill of lading on the other one thousand bushels sent at the same time with this vessel. The tolls were estimated on both of these lots." This was offered for the purpose of proving that defendants agreed by parol, before signing the bill of lading, that they would transport the barley by the inside route. This was objected to and excluded.

The plaintiff then offered the same proof, and to add thereto, that relying on such agreement, he caused the barley to be insured by the inside route; that defendants well knew that the designation of a route was required for the purpose of effecting such insurance. This was objected to and excluded.

The plaintiff offered the same proof in a variety of other forms, which was also excluded.

The plaintiff then proved his insurance from Albany to Baltimore for $1,150 " via canal," and also the injury to the barley as claimed in the complaint.

The defendants then proved that each of the routes, the inside or canal, and outside or ocean, were customary and usual modes of transportation between Albany and Baltimore; that his vessel was staunch and seaworthy; that a violent storm arose while on her voyage, by which the barley was wet and damaged.

The referee found, as matter of law, that plaintiff could not recover, and directed judgment for defendants.

*Marcus T. Hun* for the appellant. The evidence offered was competent by way of estoppel. (*Bookman* v. *Nutcalf*, 34 How. Pr., 429, 433; *Dezell* v. *Odell*, 3 Hill, 215; Pars. on

Conts. [5th ed.], 793, note *q*, § 4, chap. 4, part II; *Man. &
T. Bk.* v. *Hazard*, 30 N. Y., 230; *Hand* v. *Banes*, 4 Whart.,
214, 215.) Usage will govern matters not provided for in the
bill of lading. (*Lowry* v. *Russele*, 8 Pick., 362; 1 Greenl. Ev.
[12th ed.], § 292; *Bliven* v. *N. E. Screw Co.*, 23 How.,
U. S., 420; *Outwater* v. *Nelson*, 20 Barb., 29–31; *Beardsley*
v. *Davis*, 52 id., 159–164; *Dawson* v. *Kittle*, 4 Hill, 107; 2
Redf. on Railways [4th ed.], 135, § 184; *Wheeler* v. *Newbold*,
5 Duer, 29–33.) Defendants have failed to bring themselves
within the exception of the bill of lading by showing that the
damages resulted from the " dangers of the seas." (Abb. on
Ship'g, S. & P. notes, 470, note 2; Holt on Ship'g, 412; 2
Greenl. Ev., 219; Angell on Carriers [4th ed.], § 173; Abb.
on Ship'g, marg. p. 346; *Steamboat Co.* v. *Edson*, 1 Harp.,
266; Abb. on Ship'g, 7 Eng., 5 Am. ed., marg. pp. 346–351.)
Plaintiff made out a perfect case against Ashton. (*McCready*
v. *Thorne*, 49 Barb., 438; *Sewall* v. *Allen*, 6 Wend., 351.)

*Esek Cowen* for the respondent. The referee properly
excluded parol evidence as to the contract of affreightment.
(Angell on Carriers, 232, §§ 228, 229; *Crevy* v. *Holley*, 14
Wend., 26; *Graves* v. *Harwood*, 9 Barb., 477, 481; *Niles* v.
*Gulver*, 8 id., 205; *Ellis* v. *Willard*, Seld., notes, April, 1854;
*Scovil* v. *Griffith*, 12 N. Y., 509; *Fitzhugh* v. *Wyman*, 9 id.,
559.) The course of the vessel could only be limited by
express agreement. (Angell on Car., §§ 179, 226; *May* v.
*Babcock*, 4 Ohio, 334.) The declarations as to the intended
course and all prior and cotemporaneous negotiations were
merged in the bill of lading. (*Renard* v. *Sampson*, 2 Kern.,
561; *Parkhurst* v. *Van Cortland*, 1 J. Ch., 273; *Frost* v.
*Everet*, 5 Cow., 497.) Ashton cannot be made liable. (*Rey-
nolds* v. *Tappan*, 15 Mass., 362; *Tuckerman* v. *Brown*, 17
Barb., 191; *Marcy* v. *Wheeler*, 30 N. Y., 231.)

HUNT, C. The plaintiff entirely failed to establish the
cause of action set forth in his complaint. He then alleged
that the defendants had received the barley upon a contract

to transport the same from Albany to Baltimore by the inland or canal route, and that he had insured the barley for that voyage; but that defendants failed to transport it by that route, and transported it by the ocean route; that it was wet and injured, and that the plaintiff lost his insurance and was damnified to the amount of $490.85, for which sum he demanded judgment. On the trial he produced written evidence of the contract to transport, to wit, the bill of lading. This contract, however, contained no limitation as to the route to be taken by the vessel. It was simply a contract that the barley was to be " delivered at the port of Baltimore in good order, the dangers of the seas excepted." This authorized the carrier to take either of several customary and usual routes. Such is the legal effect of the contract. (Angell on Carriers, §§ 179, 226.)

Its effect was the same as if the provision had been inserted in the contract, that the carrier was at liberty to take any customary or usual route, in his discretion.

Such was the written contract; and it was not competent to vary it by parol evidence of a different understanding. Its legal effect is as unassailable by parol as are its express terms.

The various offers made by the plaintiff to prove " that the defendants agreed by parol, before the bill of lading was signed, that they would transport the barley by the inside or canal route," were properly excluded. The admission of the evidence would have been in violation of the plainest rules of law.

The plaintiff again offered to prove the same facts, and, in addition thereto, that money was furnished for the payment of the tolls by the canal route; that, relying upon this promise of the defendants to take the canal route, the plaintiff insured his barley by that route; and that as the same was injured while being transported on the ocean route, he lost his insurance, and suffered the damage claimed; and that the defendants, at the time of making the contract, well knew all the facts then offered to be proved. The plaintiff

insists that this evidence was competent by way of estoppel, and that its exclusion was error. It is argued that the defendants, by their declaration and acts, and with knowledge that the plaintiff was about to insure in accordance therewith, agreed to take the inside route, and that they are estopped from setting up their right to take any other route, although, by the terms of the written contract, they were unrestricted.

This argument is plausible, but it is not sound. Its allowance would overthrow the well-established rule, · that the writing must prevail over any and all previous parol agreements; it is a common, almost an inevitable result, that the party who relies upon a parol understanding, in hostility to or unsupported by the written contract, suffers damage. It is the fact existing in nearly every one of that class of cases, that the party who claims the rigor of the writing inflicts an injury upon his confiding neighbor who trusts to a verbal assurance. While we lament that a higher standard of honor does not prevail, we must stand by the well-settled rules of law. In this case the carrier had the right to look into his bill of lading, and be governed by what he there should read. We do not know what necessities operated · to change his avowed intention of ·taking the inner route, nor should we be justified in canvassing them. It is enough that he chose to stand by his writing. I am not aware of any principle of estoppel which can be applied to the case. An estoppel *in pais* is sometimes invoked to exclude a party from showing the truth, when by his acts or declarations he has induced another to act in a particular manner. In such case he will not be permitted to deny the truth of his admission if the consequence would be an injury to such other person.

I think it will be found that the present case does not fall within this principle. Here was a promise simply to do a given thing, allowing the utmost force to the evidence and the offers, to wit, to transport the goods by the inner route. There was no assertion of an existing fact, the truth of which the party now wishes to disprove. He failed to perform his verbal agreement. Is there any case which, upon the prin-

ciple of estoppel, will prohibit his taking advantage of the rule that this agreement was merged in the writing? The cases are based upon the idea that the party asserts or admits the existence of some fact. Thus, in *Dezell* v. *Odell* (3 Hill, 215), one who gave a receipt to the sheriff for certain property seized upon execution and which he agreed to deliver to him on a day named, was held to be estopped from denying the sheriff's title. The existing fact of title was the fact which he had admitted, and which he was not allowed to dispute. The agreement stood in force and upon the writing. So, one who admits that he is in the possession of certain premises and thereby induces the plaintiff to make him a defendant in an ejectment suit, will not be permitted to dispute such possession. It is the existing fact of possession that he is estopped to deny.

In the *Presb. Cong. of Salem* v. *Williams* (9 Wend., 147) the tenant declared that there was no property on the premises liable to a distress for rent, and an action of ejectment was, thereupon, brought for the purpose of re-entering. The defendant attempted to defeat the action by showing that there was sufficient property on the premises liable to distress. It was held that he was estopped by his admission.

In *Stonard* v. *Dunkin* (2 Camp., 344), one Knight gave the plaintiff an order on the defendants, who were warehousemen, for a quantity of malt they had in store. The defendants gave a written acknowledgment that they held the malt on the plaintiff's account, and the plaintiff advanced £7,500 to Knight on the security of the malt. In an action by the plaintiffs, the defendants were held to be estopped from denying the plaintiffs' title to the malt. The defendants having expressly conceded the fact that they had and held the malt for the plaintiffs, could not disprove the truth of that admission.

In *Hollister* v. *Johnson* (4 Wend., 639), it was held to. be necessary for a constable to search for property before he takes the body of the defendant. But where the defendant asserts that he has no property, Sutherland, J., says, that the constable may act upon the assertion and the defend-

ant is not at liberty to deny it. The books are full of cases establishing this principle, and in a great variety of forms.

In Parsons on Contract (2 Pars., 793, chap. 4, § 4), the principle is thus announced: "When a man has made a declaration or representation, or caused, or in some cases not presented a full impression, or done some significant act with intent that others should rely and act thereon, and upon which others have honestly relied and acted, he shall not be permitted to prove that the representation was false, or the act unauthorized or ineffectual, if injury would occur to the innocent party, who acted in full faith in its truth or validity." He concludes his chapter on the subject with this remark: "The whole doctrine of estoppel *in pais* originated in courts of equity and passed from them into courts of law, and the doctrine of equity is often asserted in respect to them by courts of law, and where there is no violation or neglect of any duty of any kind we apprehend that it must be a very strong case which comes within the law of estoppel." (Id., 801.) The notes to the chapter cited contain an immense number of instances in which the principle in question has been applied. None of them cover the present case or give countenance to the idea that the principle is to subvert that other principle, that all prior or cotemporaneous parol agreements are absorbed in the writing by which the contract is consummated. The ruling of the referee on this point was correct.

The defendants carried the barley to Baltimore by an accustomed route and there delivered it. Their vessel was seaworthy, staunch and well manned. The injury occurred from a violent storm at sea. It occurred, as we are to infer from the evidence and from the finding of the referee, from the dangers of the seas, and without fault of the carriers. Under such circumstances there is no liability.

The order of the General Term should be reversed as to defendant Ashton and judgment on the report of the referee affirmed as to him with costs.

All concur.

Judgment accordingly.