## SUPREME COURT.

DAVID GIRVIN agt. WILLIAM HICKMAN and another, executors, &c.

*Guardian's bond — when and how action upon may be maintained — Complaint — Answer — Demurrer.*

When a pleading is demurred to, the pleading to which it professes to be an answer, may be attacked, and if insufficient to constitute an answer, judgment may be directed accordingly.

Where, on the appointment of a guardian to an infant by the surrogate, a bond with sureties is taken, pursuant to the statute, for the faithful performance of the guardianship, and to render an account, &c., an action cannot be maintained upon the bond of the guardian, until the liability of the guardian be made to appear by an actual accounting outside of judicial proceedings, or as the result of such proceedings.

But where the bond of the guardian is so full and specific, that the rights of the parties can be determined by it alone, without resort to facts *aliunde*, it is not necessary to allege or prove an accounting by the guardian before holding the surety liable upon the bond.

*Monroe Special Term, October,* 1879.

THIS is an action on a general guardian's bond, given by him on his appointment as such, by the surrogate of Monroe county. The condition of the bond was in conformity with the provisions of the statute, relating to the appointment of a guardian by surrogate.

The plaintiff was also a legatee, under the will of his mother. The legacy was of the value of $450 and over. The legacy was paid over by the surrogate to the guardian. Before such payment was made, the surrogate required the guardian to give security to the plaintiff, then a minor, for the faithful application and accounting for such legacy as provided by statute; and, accordingly, a further condition was inserted in the bond. The guardian had died previous to the commencement of the action. This suit was instituted by the plaintiff,

who had arrived at full age, against the representatives of one of the sureties on the bond, for a breach of its condition. The defendant set up several defenses to the action. Among others — the eleventh and twelfth — were, that the plaintiff made no demand upon the guardian, or his estate, for a settlement of the accounts between such guardian and ward, and that no such settlement was had; that the action accrued to the plaintiff in Canada, and out of the jurisdiction of this court; that the plaintiff did not give notice to the defendants, or their testator, of the breach of the bond, and made no demand upon defendants till the presentation of his verified claim against the estate of defendant's testator. That the estate of the guardian is solvent, and able to pay plaintiff's claim arising from the breach of the bond, and plaintiff has neglected to proceed to collect the same of the estate of the guardian.

The plaintiff demurred to these defenses.

The substance of the condition of the bond, for the breach of which the action was commenced, appears in the opinion.

DEMURRER by the plaintiff to the eleventh and twelfth defenses of the answer.

*Daniel B. Beach*, for plaintiff.

*C. H. Gorham*, attorney, and *John W. Stebbins*, counsel, for defendants.

MACOMBER, *J.* — Inasmuch as the counsel for the defendants urge, with much vigor, that the complaint of the plaintiff does not state facts sufficient to constitute a cause of action, it becomes necessary to examine that pleading before determining whether the answer, as contained in the eleventh and twelfth defenses, is sufficient in law to constitute a defense, for when a pleading is demurred to the pleading to which it professes to be an answer may be attacked, and if insufficient

to constitute a cause of action judgment may be directed accordingly (*People* agt. *Booth*, 32 *N. Y.*, 397).

The complaint alleges that the plaintiff is the sole residuary legatee under the last will and testament of Sarah J. Girvin (which was admitted to probate on the 15th day of October, 1855), by which he was entitled to a legacy of the value of $450 and upwards, to be paid to his general guardian, George Linfoot; that the legacy was accordingly paid to the guardian on the 23d day of February, 1858; that the sureties upon the guardian's bond were James McIntosh and John Bliss. A copy of the bond is annexed to the complaint.

That the guardian did not, at any time, render any account of the moneys or property received by him, or of the application thereof, or of his guardianship in any respect, although often reqested to do so, but that, on the contrary, he wrongfully converted the said legacy, except the sum of seventeen dollars, to his own use. That the said John Bliss, one of the sureties, died on the 11th day of March, 1876, leaving a last will and testament, which was admitted to probate on the 3d day of April, 1876, and upon which letters testamentary were issued to the defendants. That this claim of the plaintiffs was presented to one of the defendants on the 5th day of April, 1879, accompanied with an offer to refer the claim pursuant to the statute, and that the defendants rejected the claim, and refused to join in a reference thereof.

From this summary of the facts set forth in the complaint, it is seen that, by the action, this plaintiff having attained his majority, seeks to recover from the personal representatives of a surety on the bond of the plaintiff's guardian, the amount of money and property coming to his hands, concerning which the guardian never rendered an account, but which was wrongfully converted by the guardian to his own use.

It will be observed that there is not an allegation of an accounting between the guardian and ward, either with or without the intervention of a court, nor an allegation that any proceedings at law have been taken against the principal.

In the case of *Stillwell* agt. *Mills* (19 *John.*, 304), it was held that an action could not be maintained upon the bond of the guardian, until after the accounts had been settled by the parties, or there had been some proceedings against the guardian in the court of chancery. That was the case of a general guardian appointed by the surrogate, as is also the case before me.

In *Salisbury* agt. *Van Hoesen* (3 *Hill*, 77), which arose upon the appointment of a guardian in proceedings to sell an infant's real estate, it was held that the bond could not be prosecuted until proceedings for an accounting had been taken against the guardian in chancery, or the amount otherwise ascertained by the principals.

The case of *Cuddeback* agt. *Kent* (5 *Paige* 92) held that the sureties of a guardian appointed for the sale of infant's real estate might be joined with the guardian as defendants in a bill in chancery charging him with a breach of trust, and with having wasted the property intrusted to his care, and praying for an account and satisfaction of what might be found due; and that it is not necessary that a decree should have been first obtained against the guardian alone before proceeding against him and his sureties jointly; and that the court could make a decree in such a suit for the payment by the guardian of the amount found due upon the accounting, with a decree over against the sureties, to the extent of their liability, if the whole could not be collected of the principal debtor.

The case last above cited was supposed, by judge BRONSON, who delivered the opinion in *Salisbury* agt. *Van Hoesen* (*supra*), to be inconsistent with the decision in *Stillwell* agt. *Mills*. I do not so understand it. As it seems to me there is nothing inconsistent in the positions taken by those three cases, for in *Cuddeback* agt. *Kent* the court, with its plenary equity powers, was careful to provide that the judgment, which might ultimately go against the sureties, should not become effective until, not only the extent of the liability of·

the principal, but his ability to pay as well had been ascertained. This, in legal effect, is no more than was decided in the case preceding it, and in the case following it, already alluded to. In them all is discernible, the principle that, in the ordinary undertaking of the surety for the faithful discharge of his duties by the guardian, the liability of the guardian "must be made to appear by an actual accounting outside of judicial proceedings, or as the result of such proceedings, though the remedy against the sureties in a proper case may be pursued in the same suit which seeks to establish the amount of the liability of the principal.

The case of *Brown* agt. *Snell* (57 *N. Y.*, 286) also recognizes the principle that before the surety can be required to pay, the extent of the liability of his principal must first be ascertained either by judicial proceedings or otherwise.

Such being the well established rule of law, founded on decisions which I am not at liberty to disregard, it follows that the complaint in this case is fatally defective in the particulars stated, unless the condition of the bond in suit is substantially different from those in the foregoing cases.

The material part of the bond is as follows : " The condition of this obligation is such that if the above bounden, George Linfoot, about to be appointed by the surrogate of Monroe county guardian to said David Girvin, shall faithfully, in all things, discharge the duties of a guardian to the said David Girvin according to the laws of the state of New York, and render a true and just account of all money and property received by him, and of the application thereof, and of his guardianship, in all respects, to any court having cognizance thereof when thereunto required." [To this point the bond is, in substance, the same as were given respectively in the cases cited, and if it was the whole of the obligation an allegation would be required that an accounting, or something equivalent to it, had been had, either with or without the intervention of a court, in order to render the complaint sufficient in law. But the bond proceeds.] " The further

and other condition of this obligation is such that, whereas, on the settlement of the accounts of John Green and Sarah Bliss, executor and executrix of the last will and testament of Sarah J. Girvin, deceased, certain moneys and notes and accounts uncollected belonging to said estate, and by said surrogate decreed to be in the hands of said executor and executrix, which are to be brought into the office of said surrogate, and which, by said last will and testament, are bequeathed to said David Girvin; and, whereas, said surrogate is about to direct said moneys and notes and accounts to be paid and delivered over to said George Linfoot, said general guardian; now, therefore, if the said George Linfoot shall faithfully, in all things, *apply said legacy, consisting of said moneys, notes and accounts,* and account for the same when thereunto required, then this obligation to be void and of no effect, otherwise to remain in full force and virtue." Here, then, is a case of an ascertained legacy, consisting of money, notes and accounts, which, as this bond itself says, were bequeathed to David Girvin. By the decree of the surrogate on the settlement of the accounts of the executors of the last will and testament of Sarah R. Girvin, these were brought into court for delivery to the legatee, but being a minor he could not receive them so as to discharge the executors from further liability thereon. The guardian undertook to "apply said legacy," which means that he will turn over the same to the legatee when the latter becomes of age, instead of which, notwithstanding a demand, he has converted them to his own use. In a literal and technical sense, therefore, no accounting was needed either (1) to ascertain how much property the guardian had received, or (2) to show what he had done with it; for both were determined by the terms of the bond itself. In other words, the bond is so full and specific, that the rights of the parties can be determined by it alone, without resort to facts *aliunde.* In such a case, in my judgment, it is not necessary to allege or prove an accounting by the guardian, before holding the surety liable upon the bond.

It is not necessary, I apprehend, to consider at length whether the eleventh and twelfth defenses, set forth in the answer are sufficient in law, for it is manifest, on inspection, that neither of them contains matter which constitutes a defense; the only way of sustaining them, is by attacking the sufficiency of the complaint, as was done by the counsel on the argument, though ineffectively as already shown.

The demurrer is well taken and must be sustained, with costs.