[No. 9860.    Department One.    November 4, 1911.]

Emerson Company, Incorporated, *Appellant*, v.
Chargeurs Reunis, *Respondent*.[1]

Shipping—Transportation of Goods—Routes—Departure—Liability for Damage.    A steamship company is not liable for damage to a shipment of oranges from Yokohama to Seattle, under a bill of lading which did not specify the route, through failure to pursue the direct, shorter and cooler northern route, instead of the southern route by way of Honolulu and San Francisco, where it appears (1) that the two routes were usual and customary and well known to the commercial world, and (2) the southern route was, at the time the shipment was received, the usual and only route of the vessels of the defendant.

Gose, J., dissents.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 10, 1911, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action for damages.    Affirmed.

*Bogle, Merritt & Bogle*, for appellant.

*Hughes, McMicken, Dovell & Ramsey*, for respondent.

Mount, J.—The plaintiff brought this action to recover damages on account of a shipment of oranges from Yoko-

[1]Reported in 118 Pac. 631.

hama to Seattle. Upon a trial of the cause, the trial court made the following findings of fact:

"(3) That on or about the 22d day of November, 1906, the said defendant was the owner of and then operated the steamship Amiral-Hamelin, then plying between the port of Yokohama, Japan, and the port of Seattle, state of Washington.

"(4) That, heretofore and on, to wit, the 22d day of November, 1906, Yutaka & Co., at the port of Yokohama, Japan, delivered to the defendant on board of its said steamship Amiral-Hamelin five hundred (500) packages of oranges, each package containing two boxes, the property of said Yutaka & Co., and all then and there in good order and condition, to be carried by said defendant on board its said steamship Amiral-Hamelin from said port of Yokohama, Japan, to said port of Seattle, Washington, and there delivered in like good order and condition to the order of said Yutaka & Co.; that said Yutaka & Co. paid to said defendant the sum of $26.22 as freight on said oranges.

"(5) That on the said 22d day of November, 1906, at said port of Yokohama, upon receipt of said 500 packages of oranges on board said steamship Amiral-Hamelin, as aforesaid, the master of said steamship, one Debonnaire, caused to be signed and delivered to said Yutaka & Co. a bill of lading in writing therefor, a true copy of which bill of lading is attached to said complaint marked Exhibit A, and made a part thereof."

The bill of lading contained the following statement:

"Shipped by M. Yutaka Shokai on board the French steamer Amiral-Hamelin, Capt. Debonnaire, to be conveyed to Seattle and delivered, after safe arrival of the boat, unto order."

The court further found:

"(6) That thereafter and before the delivery of said oranges at Seattle, the said Yutaka & Co. duly sold, assigned, and transferred the said bill of lading unto said plaintiff, and thereby said plaintiff became the owner of and entitled to the said 500 packages of oranges.

"(7) That the most usual, shortest and most direct route for steam vessels between the port of Yokohama, Japan,

and the port of Seattle, Washington, was what was and is well known in the commercial world as the northern route, the same passing through cool water and a cool climate at said time of year.

"(8) That about six months prior to the receipt by said defendant of the said shipment of oranges, the said defendant commenced to operate steamers from Yokohama, Japan, to Honolulu, Hawaiian Islands, thence to San Francisco, California, thence to Seattle, Washington, and thence returning to San Francisco, and thence to South America. That said defendant operated a steamship upon such route from Yokohama about once every sixty days thereafter; that said steamship Amiral-Hamelin was one of the vessels then owned by said defendant company, and at the time of the receipt of said goods on said steamship, the same was about to proceed from Yokohama on a voyage to Honolulu, thence to San Francisco, and thence to Seattle, and was the third or fourth steamship to be operated by the defendant company on said route; and that said route was then the usual and customary and only route of defendant's steam vessels between Yokohama and Seattle.

"(9) That after such receipt of said oranges by said defendant it did not cause its said steamship Amiral-Hamelin to proceed from Yokohama to Seattle by said northern route; but did cause said steamship to thereupon proceed from said port of Yokohama to Honolulu, Hawaiian Islands, and thence to San Francisco, California, and thence to Seattle, Washington, and did carry said oranges from Yokohama to Seattle on said route via Honolulu and San Francisco, and delivered said oranges at Seattle, Washington, on January 16, 1907, and more than thirty days later than the same could have been carried between Yokohama and Seattle and delivered, if said steamship had proceeded or said oranges had been carried and transported via said northern route.

"(10) That such route from Yokohama to Seattle, via Honolulu and San Francisco was different from, and very much longer, than the said northern route, and the same passed through water and a climate very much warmer at said time of the year than the said northern route."

Upon these findings the trial court concluded that the defendant was not liable, and dismissed the action. The plaintiff has appealed.

The evidence is not before us.    The appellant rests its case upon the findings made by the trial court, and argues that the bill of lading issued by the respondent, providing for the transportation of the oranges in question from Yokohama to Seattle without specially designating on which route the goods were to be carried, required the respondent company to carry the oranges by the most usual, shortest and most direct sea route followed by steam vessels between Yokohama and Seattle; and it being found that the vessel did not follow that route, but followed a more distant route, by reason of which the goods were damaged, the defendant is liable.    It is, no doubt, the general rule that "a bill of lading for the transportation of goods from one port to another *prima facie* imports a direct voyage, unless there is a known usage of trade to touch at intermediate ports, or deviation is permitted in the contract of affreightment. . . ."    36 Cyc. 232.

2 Hutchinson, Carriers (3d ed.), § 613; 7 Am. & Eng. Ency. Law (2d ed.), 207.

"Where, however, there are two customary routes, and the carrier is left free to choose between them, he may make his choice, without incurring increased liability, if there are no special reasons which make the route chosen unsafe," 2 Hutchinson, Carriers (3d ed.), § 613.

See, also, *Hostetter v. Park*, 137 U. S. 30; *White v. Ashton*, 51 N. Y. 280; *Empire Transportation Co. v. Wallace*, 68 Pa. St. 302, 8 Am. Rep. 178; *Thatcher v. McCulloh*, Fed. Case, No. 13,862; *Lowry v. Russell*, 8 Pick. 360.

In the last case cited, the court said:

"The bill of lading, like other contracts, is to be construed according to the intention of the parties.    Usage of trade is always presumed to be within the knowledge of the parties, and these contracts are supposed to be made with reference to it.    There is nothing in the evidence in the present case, contradicting the express terms of the bill of lading, which are that the goods shall be carried from New York to Georgetown.    A direct voyage is *prima facie* intended, but this

may be controlled by usage, or by personal knowledge of the shipper. There was competent evidence of the usage in relation to a vessel like this; and there was also evidence that the voyage was known to be by the way of Norfolk."

In *Hostetter v. Park, supra,* Justice Blatchford said:

"But it is no deviation, in respect to such a voyage, to touch and stay at a port out of its course, if such departure is within the usage of the trade. . . . The same doctrine is applicable in the case of the bill of lading, even though the usage be not known to the particular shipper, if it be established as a general usage. . . . It is well settled that parties who contract on a subject-matter concerning which known usages prevail, incorporate such usages by implication into their agreements, if nothing is said to the contrary."

In *White v. Ashton, supra,* the court said:

"This contract, however, contained no limitation as to the route to be taken by the vessel. It was simply a contract that the barley was to be 'delivered at the port of Baltimore in good order, the dangers of the seas excepted.' This authorized the carrier to take either of several customary and usual routes. Such is the legal effect of the contract (Angell on Carriers, §§ 179, 226). Its effect was the same as if the provision had been inserted in the contract, that the carrier was at liberty to take any customary or usual route, in his discretion."

In this case the effect of the court's findings is that there are two usual and customary routes between Yokohama and Seattle, one "well known in the commercial world as the northern route," and the other "to Honolulu, thence to San Francisco, and thence to Seattle;" that this last named route was "the usual and customary and only route of defendant's steam vessels." Under the rules as stated in the authorities above cited, the defendant was free to choose either of these routes. Furthermore, the court found that the route taken by the vessel was the usual and customary route, and, also, that it was the only route of defendant's vessels. If usage of the trade is to be presumed within the

knowledge of the parties, as stated in *Lowry v. Russell, supra,* and if there is no deviation where the vessel touches points out of her course, if such departure is within the usage of the trade, even though such usage be not known to the particular shipper, as it is stated in *Hostetter v. Park, supra,* in either event it necessarily follows that there can be no recovery in this case. The court here found, upon evidence which was no doubt sufficient, that the vessel upon which the oranges were shipped pursued the usual and customary and only route of its steam vessels. There was no evidence, or rather there was no finding, that the shipper did not know this fact. The presumption must therefore be that he did know the fact, and made the shipment with reference to it.

Judgment affirmed.

DUNBAR, C. J., PARKER, and FULLERTON, JJ., concur.
GOSE, J., dissents.