The Shafton Company, Appellee, v. The St. Louis, Iron Mountain & Southern Railway Company, Appellant.

### Gen. No. 17,498.

1. CARRIERS—*when not liable for conversion.* Where plaintiff has accepted and paid the freight at destination on several cars of watermelons consigned by him, he cannot afterwards maintain an action of conversion against the initial carrier for misrouting them.

2. BILLS OF LADING—*parol evidence cannot vary.* Parol evidence cannot be introduced to prove that carrier agreed to ship by a certain route, even though the agent of carrier erased words designating route before the bill of lading was issued.

3. BILL OF LADING—*when silent as to route.* Where a bill of lading is silent as to route, it is as though there were a provision therein giving the carrier a right to select any usual route, and such provision thus inserted by law is as unassailable by parol evidence as any of the express terms of the contract.

Appeal from the Municipal Court of Chicago; the HON. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court

122    APPELLATE COURTS OF ILLINOIS.

Shafton Co. v. St. L., I. M. & S. Ry. Co., 174 Ill. App. 121.

at the March term, 1911.    Reversed.    Opinion filed October 22, 1912.

JEFFERY, OTT & CAMPBELL, for appellant; JOHN NASH, of counsel.

CHARLES A. BUTLER, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

The plaintiff, through its agent, delivered to the defendant at Blodgett, Mo., during the month of August, 1907, nine carloads of watermelons for transportation to Chicago. The freight was transported promptly, arriving at Chicago three or four days from the date of shipment, having been delivered by the defendant to the Illinois Central Railroad, and by the latter brought to Chicago. It was stipulated to be a fact that the contents of these cars when delivered to the defendant at Blodgett were in good, sound, merchantable condition, and that they were in like condition upon the tracks of the Illinois Central on the arrival of the cars in Chicago. The plaintiff paid the freight and accepted the cars.

It is claimed by the plaintiff that the defendant violated its several contracts by routing the cars to Chicago via the Illinois Central instead of via the C. & E. I. and Wabash. Bills of lading were offered in evidence which bore upon their face severallly "via C. & E. I. at East St. Louis," and "via Wabash;" but in each instance the words quoted appear to have been erased. The testimony of the defendant's agent was to the effect that the agent of plaintiff handed to the witness the bills of lading, which had been prepared by some one acting for plaintiff and that the witness then told him that he could not observe the routing, and thereupon drew a pencil through the words indicating such routing and placed his signature upon them. The testimony of the agent of the plaintiff,

however, was as follows: "In the course of my conversation with Mr. Friend (agent of the defendant), he said I would have to make a kind of a scratch between the routing, that is his instructions from the head of him, whoever was ahead of him, but that would not make any difference, that would be shown on the regular waybill, C. & E. I., as I instructed; that is, the routing as I had it on there, would be shown on the waybills. During the course of the conversation he kind of made two lines between the routings; he made lines, whatever they are that appear on the routing. When he did that to them I said that I must have that routing as I instructed him, otherwise I cannot use it for the Chicago market, and he said it positively will be that way. By way of explanation he said the instructions of the man that is ahead of him, looks after this station at that time of the year, that is his instructions from everybody, he cannot make an exception for us or anybody else; got to follow his instructions. He said I would have C. & E. I. delivery or whatever routing it contains on each one, and that there would not be any objections at all, because there would be C. & E. I. delivery; that we should not be worried about it at all." This testimony was to some extent corroborated by a witness for the plaintiff, who testified that he was present when the conversation occurred. The agent of the defendant denied that he made any such assertion. Recovery was had apparently for the difference between the market prices for watermelons delivered on the Wabash and C. & E. I. and those obtained by plaintiff upon rates by it from the Illinois Central track.

The claim of the plaintiff as stated in its brief is predicated upon the proposition that because of the misrouting there was a conversion of the goods by the defendant. Conversion has been defined to be "an unauthorized act, which deprives a man of his property permanently or for an indefinite time." Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.,

124    APPELLATE COURTS OF ILLINOIS.

Shafton Co. v. St. L., I. M. & S. Ry. Co., 174 Ill. App. 121.

157 Ill. 554. We have had no case cited to us, and we think none can be found, where a defendant has been held for the conversion of property when the admitted proof in the case was that possession of the property had been turned over to the plaintiff and accepted by him before the commencement of the suit. We have been referred to many cases of constructive conversion, such as where a consignor obtained recovery because of delivery to the consignee, after the consignor, who was the owner, had exercised his right to stop the goods in transit, but in none of these cases was it shown, as in the case before us, that the goods had been turned over to the consignor and owner and accepted by him.

It is insisted by the plaintiff that a bill of lading may be shown by parol not to express the contract between the shipper and the carrier. The case of Lake Shore & M. S. R. Co. v. National Live Stock Bank of Chicago, 178 Ill. 506, is cited as authority upon the proposition, and in the brief this portion of the opinion is italicized: "Like all recepits, such bills of lading, so far as they are receipts, may be explained, modified or contradicted by parol proof." We do not find in these words any support for the contention made by the plaintiff. There is no question as to the receipt of the freight by the defendant. As to the rest of the bill of lading, under all of the authorities it constituted a contract. In Hutchinson on Carriers, section 167, it is said: "But bills of lading except as to the recital or acknowledgment of the receipt of the goods and of their quality and condition when received, are strictly written contracts between the parties and come within the general rule which prohibits the introduction of parol evidence to contradict or vary such contracts." This doctrine finds support in a list of cases supplied by the author from nearly every jurisdiction in the country, and we have been cited to no case, either in this state or elsewhere, holding a contrary doctrine.

It is argued by the plaintiff that the bills of lading are ambiguous. We find no ambiguity in them. It is true the shipper, by its agent, expressed a desire to have the routing via C. & E. I. or Wabash, but was informed that the agent had no authority so to route, and when the contract was executed and delivered it contained no such routing. It seems to have been held uniformly that where a bill of lading is silent in respect to the line by which the goods are to be forwarded, its effect is the same as if a provision were therein inserted that the carrier should have the right to select at its discretion any customary or usual route which is regarded as safe and reasonable, and that this provision being thus inserted into the contract by law is as unassailable by parol as any of the express terms of the contract. Snow v. Indiana, B. & W. R. Co., 109 Ind. 422; White v. Ashton, 51 N. Y. 280; Simkins v. Steamboat Co., 11 Cush. (Mass.) 102; Hudson Canal Co. v. Coal Co., 8 Wall. (U. S.) 276.

The judgment of the Municipal Court will be reversed.

*Reversed.*