Snow *et al. v.* The Indiana, Bloomington and Western Railway Company.

------

No. 12,840.

## SNOW ET AL. *v.* THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY.

COMMON CARRIER.—*Evidence.*—*Bill of Lading.*—*Parol Agreement to Forward by Particular Line.*—Where a shipper accepts a bill of lading which designates no route by which the consignment is to be forwarded after reaching the terminus of the contracting company's line, it is not competent to prove a prior parol agreement to forward by a particular line.

SAME.—*When First Carrier May Select Forwarding Line.*—*Contract.*—*Provisions Supplied by Law.*—*Contradiction by Parol.*—The shipper, in such case, authorizes the first carrier to select any usual or reasonably direct and safe route by which to forward the consignment beyond its line, and this provision, being imported into the contract by law, is as unassailable by parol as the express terms of the contract.

SAME.—*Breach of Common Law Duty.*—*Evidence.*—Where it appears that goods were received for shipment under a written contract set up in one paragraph of complaint, there can be no recovery under another paragraph counting on a breach of the carrier's common law duty, and evidence of a parol agreement is not admissible under the latter paragraph.

From the Clinton Circuit Court.

*G. W. Paul, J. E. Humphries, T. F. Davidson, F. M. Dice, S. O. Bayless* and *W. M. Reeves,* for appellants.

*C. W. Fairbanks, W. R. Moore* and *O. Gresham,* for appellee.

MITCHELL, J.—The plaintiffs below brought this suit against the railway company to recover damages for an alleged breach of a contract for the shipment of a car load of horses

from Crawfordsville, Indiana, to Buffalo, New York, *en route* to Boston, Massachusetts.

At the time the horses were delivered for shipment by the appellant's agent, the latter received from the railway company a bill of lading which contained, among other stipulations, the following:

## "Live Stock Contract—The Indiana, Bloomington and Western Railway.

| CARS. | | Consignee's marks. | CRAWFORDSVILLE, Aug. 14, 1883. |
|---|---|---|---|
| Initial. | No. | Destination, Etc. | Received from W. H. Schooler the following stock: Seventeen horses. |
| I., D. & S. | 1275 | | |
| | | C. & E. Snow, Boston, Mass. | Consigned, numbered and marked as per margin, to be transported by the Indiana, Bloomington and Western Railway, to its freight station at Indianapolis, ready to be delivered to the consignee, or his order, or (if the same is to be forwarded beyond said station) to the agent of a connecting railroad or forwarding company, *whose line may be considered a part of the* |
| Bill of lading (Contracting) From Crawfordsville to Buffalo, N. Y. via. ........................ Through at $73.00 per car load. | | | |

*route*, to the place of destination designated in the margin, to be in like manner forwarded and delivered to, and by each succeeding railroad or forwarding company in the route, until it reaches the point contracted for in this bill of lading."

It was assigned as a breach of its contract, that the railway company received the horses, and carried them by its own line to Indianapolis, after which, instead of delivering them to the "Bee-Line Route," as it was alleged it had agreed to do, it delivered them to the "Nickel-Plate Road," which, by reason of the latter being the longer route by about three hundred miles, delayed the horses in arriving at Boston some four days beyond what would have been required by the

other route. By reason of this delay, and the unfitness of the route chosen, it is alleged the horses sustained permanent injury. It is also alleged that the failure to ship by the "Bee-Line Route" was a violation of the contract of shipment.

The complaint is in two paragraphs. The bill of lading was made a part of the first paragraph. Both paragraphs count upon the violation of an alleged agreement to ship from Indianapolis to Buffalo, N. Y., by the "Bee-Line Route."

The defendant answered by a general denial. The case was submitted for trial to a jury. Under instructions from the court the jury returned a verdict for the defendant.

At the trial the plaintiffs produced W. H. Schooler, their agent at Crawfordsville, Indiana, and by suitable questions, addressed to him while testifying as a witness, proposed to prove that prior to the shipment of the horses, the plaintiffs, through the witness, made a contract with the agent of the railway company, by which it was agreed that the company should ship the horses by its route to Indianapolis, thence by the "Bee-Line Route" to Buffalo, N. Y. The plaintiffs proposed to prove further, that it was agreed that the horses were to be unloaded at Gallion, Ohio, a regular feeding point on the route last above mentioned, and that after being fed and watered, they were to be again reloaded, and carried by that route to Buffalo. They proposed to prove further that the defendant had carried other car loads of horses for the plaintiffs, under this same arrangement, which was by parol, and that they had been carried over the Bee-Line road.

The bill of lading having been exhibited to the court, and it having been made to appear that the shipment in question had been made by the company, after such bill of lading had been delivered to and received by the plaintiffs' agent, the court excluded all evidence relating to any parol agreement covering the subject of the shipment. Whether such evidence was admissible is the only question presented for consideration.

The appellants contend, there being no route stipulated in the bill of lading, that it became the duty of the appellee to forward the horses by the usual and most direct route from Indianapolis to Buffalo, and that hence the evidence offered should have been received.

This proposition is in part abundantly maintained, but this does not meet the point in dispute. Having taken a bill of lading which upon its face designates no particular route by which the horses were to be forwarded, after reaching the terminus of the appellee's line, was it competent nevertheless to prove a parol agreement to forward by a particular line?

Conceding that a carrier is liable for any injury resulting to a shipper by reason of its selection of an unusual or indirect route, by which to forward freight which is destined to a point beyond its line, the question still remains, how was it material or competent to add to or vary the written contract of shipment by proof of a previous parol agreement?

A shipper, who receives a bill of lading for goods consigned to a point beyond the terminus of the initial carrier's line, authorizes the initial carrier to select any usual or reasonably direct and safe route by which to forward, after the goods reach the end of his line, unless the particular line by which the goods consigned are to be forwarded is designated in the bill of lading. In such a case, the bill of lading being silent in respect to the line by which the goods are to be forwarded, its effect is the same as if a provision were therein inserted that the carrier should have the right to select at his discretion any customary or usual route which was regarded as safe and responsible. This provision, being thus imported into the contract by law, is as unassailable by parol as any of the other express terms of the contract. *White* v. *Ashton,* 51 N. Y. 280; *Hinckley* v. *New York, etc., R. R. Co.,* 56 N. Y. 429; *Simkins* v. *Norwich, etc., Steamboat Co.,* 11 Cush. 102; *Hudson Canal Co.* v. *Pennsylvania Coal Co.,* 8 Wall. 276, 288.

Stipulations which the law imports into a contract, become as effectually a part of its terms as though they were expressly written therein. *Long* v. *Straus,* 107 Ind. 94.

In the absence of fraud or mistake, it must be conclusively presumed that the oral negotiations respecting the terms and conditions upon which the goods were received, and the route by which they were to be forwarded, are merged in the bill of lading. This must be taken as the final repository and the sole evidence of the agreement between the parties. *Indianapolis, etc., R. R. Co.* v. *Remmy,* 13 Ind. 518; *Hall* v. *Pennsylvania Co.,* 90 Ind. 459; *Bartlett* v. *Pittsburgh, etc., R. W. Co.,* 94 Ind. 281.

The cases last cited maintain the rule, that where suit is brought against a common carrier for a breach of common law duty, in failing to carry or deliver goods, if the evidence shows that the goods were received under a special written contract which was not declared on, the variance is fatal, and there can be no recovery. This suggestion disposes of all that is said by counsel, in respect to the competency of the offered evidence, as applicable to the second paragraph of the complaint. Since it appeared that the goods were received for shipment under the written contract set up in the first paragraph, there could, in no event, have been a recovery under the second paragraph, which simply counted upon a breach of the carrier's common law duty.

The facts offered in evidence do not bring the case under consideration within the principle which ruled the case of *Guillaume* v. *General Transportation Co.,* 100 N. Y. 491. In that case the goods had been received, and actually shipped, in pursuance of a parol contract. It was held that the subsequent receipt of a bill of lading did not preclude the shipper from showing the terms of the parol contract under which the goods were received and shipped. In that case the court said: "As a general rule, where goods are delivered to a carrier for transportation, and before the goods are shipped, a bill of lading or receipt is delivered by him to the

shipper, the latter is bound to examine it and ascertain its contents, and if he accepts it without objection, he is bound by its terms; he can not set up ignorance of its contents, and resort can not be had to prior parol negotiations to vary them." *Germania F. Ins. Co.* v. *Memphis, etc., R. R. Co.,* 72 N. Y. 90 (28 Am. R. 113).

The plaintiffs' case, as made by their complaint, proceeds upon the theory that the appellee violated its contract by shipping the property delivered to it, over an unusual and indirect route which was not provided with proper facilities for the care of stock, when another customary, direct and more available route was open for carriage. It was competent to have recovered upon this theory if the facts had sustained it, without proof of a parol agreement such as was offered. Such proof was neither material nor competent after it had been made to appear that prior to the shipment a written bill of lading had been received by them which covered the terms of shipment. There was no error.

The judgment is affirmed, with costs.

Filed Jan. 4, 1887; petition for a rehearing overruled Feb. 5, 1887.