The Louisville, Evansville and St. Louis Railroad Co. *v.* Wilson *et al.*

Judgment affirmed.

Filed June 19, 1889.

No. 14,584.

## The Louisville, Evansville and St. Louis Railroad Company *v.* Wilson et al.

Common Carrier.—*Bill of Lading.*—*Contract.*—*Merger.*—*Parol Evidence.*— A bill of lading being both a receipt and a contract, it may, so far as it is in the nature of a receipt, be explained or contradicted by parol; but so far as it is a contract it merges all prior and contemporaneous agreements, and, in the absence of fraud, concealment or mistake, and when free from ambiguity, its terms or legal import can not be explained or added to by parol.

Same.—*Compensation of Carrier.*—*Stipulation in Bill of Lading.*—*Rule Where Amount of Charge is Omitted.*—*Legal Implication.*—*Previous Oral Contract.*— Where a bill of lading contains a stipulation as to the amount to be charged for transportation, it is, in the absence of fraud or mistake, conclusive upon the shipper; and where the amount to be charged is not stated in the bill of lading, the law implies as a part of the contract that the carrier shall have a reasonable compensation, such as is commonly or customarily charged others for like services under like conditions, and evidence of a previous oral contract fixing the charge is not admissible.

From the Vanderburgh Superior Court.

The Louisville, Evansville and St. Louis Railroad Co. *v.* Wilson *et al.*

*A. P. Humphrey, A. Gilchrist* and *C. A. DeBruler,* for appellant.

*J. S. Buchanan, C. Buchanan* and *W. Hamill,* for appellees.

Mitchell, J.—Wilson & Chambers, partners, engaged in purchasing and shipping cross-ties used in the construction and maintenance of railroads, sued the appellant railroad company to recover for alleged excessive freight charges paid upon three hundred and fifty-four car-loads of ties shipped over the defendant company's railroad. The plaintiffs allege that the railroad company entered into an agreement with them whereby it became bound to receive and transport to points named cross-ties at the rate of $14 per car-load ; that in pursuance of the agreement so entered into, the defendant company received and transported the number of carloads above mentioned, but that, in disregard of the contract, it collected $2,700 in excess of the amount agreed upon from the consignees, and that the latter deducted that sum from the price paid the plaintiffs.

This appeal is from a judgment in favor of the plaintiffs for the full amount claimed in their complaint. The questions for decision arise upon the ruling of the court in overruling the appellant's motion for a new trial.

The evidence tends to show that the plaintiffs were engaged in transporting ties over the defendant's road during the year 1886, and that during that year the rate charged for freight was seven cents a tie, or $14 per car-load. In the month of December, 1886, the company issued a circular notifying all persons engaged in shipping cross-ties over its line that the rate on freight of that description would be the same as for soft lumber, after January 1st, 1887. It had formerly been less than the soft lumber rate. The plaintiffs received this notice, but they gave evidence tending to prove that after receiving the notice one of the plaintiffs had an interview with the general freight agent of the defendant's

road, and that upon inquiry the agent said the notice was not intended to apply to the plaintiffs, but only to some other shippers of like freight, whose patronage was not desired, and that the cross-ties of the plaintiffs would be shipped at the old rate of $14 a car, notwithstanding the notice. It appeared that, under the arrangement thus claimed to have been made, three hundred and fifty-four car-loads of cross-ties were shipped to various points, and that the company collected freight from the consignees at rates ranging from $17.50 to $24.50 per car-load. The soft lumber rate over the defendant's road during the same period was about $23 per car. It appears further that as each lot was shipped bills of lading were delivered to the shipper by the company. The bills of lading for one hundred and sixty-eight cars contained an acknowledgment of the receipt of the number of ties on each car, and specified the weight, and stipulated that the ties were to be transported over the defendant's line of road to the company's freight station at Evansville, and there delivered to connecting lines on payment of freight and charges in par funds. The cars were consigned to the C. B. & Q. R. W. Co., Aurora, Illinois. The column in which the amount to be charged for freight might have been indicated was left blank. The bills of lading for one hundred and eighty-six cars were in all respects similar to those above described, except that they contained a statement of the amount to be paid for freight, the amount inserted being that actually charged. These bills were received, as they were issued, by the plaintiffs without objection.

It is to be observed that the complaint was framed and that the action proceeded to judgment upon the theory that the ties were shipped under an oral agreement, by the terms of which the railroad company bound itself to carry the plaintiff's freight at the rate of $14 per car-load. The action is to recover for overcharges made in disregard of this agreement. The proof, however, shows, without any contradiction whatever, that the shipments were made—with

possibly some exceptions, in which cases bills were delivered after the shipments had been made—pursuant to written and printed bills of lading, signed by the company's agent and delivered to the shipper before the transportation began, in each instance.

The question presented at the threshold, therefore, is, was it competent for the plaintiffs, without alleging any fraud, concealment or mistake, to recover upon an oral contract made prior to the issuing of the bills of lading, which are supposed to set forth the terms and conditions upon which the goods were to be transported, or must the rights of the parties be determined by the express terms and legal import of these instruments? A bill of lading is twofold in its character. It is a receipt, specifying the quantity, character and condition of the goods received; and it is also a contract, by which the carrier agrees to transport the goods therein described to a place named, and there deliver them to a designated consignee upon the terms and conditions specified in the instrument. *The Delaware*, 14 Wall. 579 ; *O'Brien* v. *Gilchrist*, 34 Me. 554; 2 Am. and Eng. Encycl. Law, 228; *Chandler* v. *Sprague*, 38 Am. Dec. 404, and note ; *Friedlander* v. *Texas & Pac. R. W. Co.*, 9 Sup. Ct. Repr. 570.

So far as a bill of lading is in the nature of a receipt, or an acknowledgment of the quantity and condition of the goods delivered, it may, like any other receipt, be explained, varied, or even contradicted ; but as a contract, expressing the terms and conditions upon which the property is to be transported, it is to be regarded as merging all prior and contemporaneous agreements of the parties, and, in the absence of fraud, concealment or mistake, its terms or legal import, when free from ambiguity, can not be explained nor added to by parol. *Snow* v. *Indiana, etc., R. W. Co.*, 109 Ind. 422, and cases cited.

" Such a contract is to be construed, like all other written contracts, according to the legal import of its terms." It becomes the sole evidence of the undertaking, and all ante-

cedent agreements are extinguished by the writing. Lawson Contracts of Carriers, section 113; *Collender* v. *Dinsmore*, 55 N. Y. 200; *Southern Ex. Co.* v. *Dickson*, 94 U. S. 549; *Bank of Kentucky* v. *Adams Ex. Co.*, 93 U. S. 174; *Kirkland* v. *Dinsmore*, 62 N. Y. 171. Thus, in *Snow* v. *Indiana, etc., R. W. Co.*, *supra*, the shipper of a car-load of horses, who had received a bill of lading in which no route was designated by which the car was to be forwarded after leaving the initial carrier's line, offered to prove that a particular line had been agreed upon. It was held that the silence of the bill of lading in the respect mentioned was the same in legal effect as if a provision had been inserted therein authorizing the first carrier to select, at its discretion, any customary or usual route which was regarded as safe and responsible, by which to forward the car, and that the provision thus imported into the bill of lading was no more subject to be assailed by parol than was any of the express terms of the contract. The cases which affirm this principle are very numerous. They proceed upon the theory that, in the absence of express stipulation, certain terms are or may be annexed to every contract by legal implication, and that stipulations thus imported into a contract become as effectually a part of the written agreement as though they were expressed therein in terms. *Long* v. *Straus*, 107 Ind. 94; *Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 8 Wall. 276, 288; *Hill* v. *Syracuse, etc., R. R. Co.*, 73 N. Y. 351. Thus, where, in a written contract for the sale of property, no time is fixed for the payment of the purchase-price, the law implies that the price is to be paid upon the delivery or transfer of the property, and the purchaser, without alleging fraud or mistake, would not be heard to prove by parol that the sale was made on credit. An apparent exception to the general rule occurs when proof of an agreement collateral to that contained in the bill of lading is offered: *Baltimore, etc., Steamboat Co.* v. *Brown*, 54 Pa. St. 77; Lawson Contracts of Carriers, section 115.

As we have seen, all the bills of lading contain a stipula-

tion to the effect that the cross-ties are to be transported over the defendant's road, and that they are to be delivered as therein specified, upon payment of freight and charges in par funds. In some of them the amount to be paid is not fixed, while in others the charges actually collected were inserted in the bills of lading before they were delivered to the plaintiffs, and before the ties were transported. Surely there can be no ground of recovery where the amount actually collected was stipulated in the bills of lading beforehand. Nor was it competent to give evidence of an oral agreement concerning the amount of freight to be paid, with a view of establishing a right of recovery in respect to those bills of lading in which the amount was not fixed in express terms. The bills of lading must be regarded as complete contracts into which all the oral negotiations of the parties are merged, or they are entirely without force or effect as evidence of the terms and conditions upon which the goods were to be transported. While it is true, the contract of a common carrier to transport goods is equally binding whether it be by parol or in writing (*Mobile, etc., R. W. Co.* v. *Jurey,* 111 U. S. 584), no good reason can be suggested in support of a rule which should declare that part of the contract might be in writing, and part, covering the same subject-matter, by parol. Either the bill of lading must be regarded as the sole repository of the agreement of the parties, in respect to the terms upon which the shipments were made, or it must be regarded as a receipt, and nothing more. As a contract, a bill of lading, like other written contracts, is presumed, in the absence of imposition or mistake, to embody the entire agreement of the parties. Lawson Contracts of Carriers, sections 112, 113 ; *Long* v. *New York, etc., R. R. Co.,* 50 N. Y. 76.

The bills of lading involved in the present case cover every subject of the contract of shipment, except that some of them are silent as to the amount of freight to be paid. If, in the absence of an agreement, the law supplies this term

by implication, then the writings constitute complete contracts, and parol evidence is inadmissible to vary, control or contradict the terms therein expressed, or those which the law certainly implies. *Indianapolis, etc., R. R. Co.* v. *Remmy,* 13 Ind. 518; *Jeffersonville, etc., R. R. Co.* v. *Worland,* 50 Ind. 339; *Pemberton Co.* v. *N. Y. Central R. R. Co.,* 104 Mass. 144.

The law makes it the duty of every common carrier to receive and carry all goods, seasonably offered for transportation, and authorizes a reasonable reward to be charged for the service. The amount to be paid is, in a measure, subject to the agreement of the parties; but when the amount is not fixed by contract, the law implies that the carrier shall have a reasonable reward, which is to be ascertained by the amount commonly, or customarily, paid for other like services. *Johnson* v. *Pensacola, etc., R. R. Co.,* 16 Florida, 623; Angell Carriers, section 392; Lawson Contracts of Carriers, section 125.

Whether a railroad company may, in the absence of legislation, agree upon different rates of compensation for similar services for different persons, is a question we need not consider in the present case. *Fitchburg R. R. Co.* v. *Gage,* 12 Gray, 393; *Spofford* v. *Boston, etc., R. R. Co.,* 128 Mass. 326; *Ragan* v. *Aiken,* 9 Lea, 609 (42 Am. Rep. 684).

Without regard to the rights of the shipper and carrier, as they may appear under special contracts, the agreement which the law imports into every bill of lading which does not stipulate the price to be paid for the service is, that the compensation shall be reasonable, and such as is customarily charged others for like service under like conditions. *London, etc., R. W. Co.* v. *Evershed,* L. R. 3 App. Cases, 1029. This is the contract which the law makes for the parties, and which is imported into every bill of lading which contains no express stipulation covering the subject of the amount to be paid. The conclusion which follows is, that in the absence of an express agreement in respect to the amount to be

charged written in the bills of lading, the law implies that the amount shall be the reasonable or customary charge. It is neither averred nor proved that the amount collected was unreasonable, or more than the usual or customary charge for like services.    The plaintiffs were, therefore, not entitled to recover.

The judgment is reversed, with costs, with directions to the court to sustain the motion for a new trial.

Filed May 8, 1889; petition for a rehearing overruled June 19, 1889.