No. 96.

## The Pennsylvania Company *v.* Clark et al.

COMMON CARRIER.—*Shipment of Live Stock.—Ownership of Stock.—Presumption as to.—Complaint.*—In an action against a railroad company as a common carrier for an alleged breach of special contracts for the shipment of cattle, when it appears from the complaint as a whole that the plaintiffs were the owners of the stock, and no consignee is named in the contracts, it will be presumed that the shipment was to be made to them.

SAME.—*Complaint.—Averments as to Common Carrier.—Sufficiency of.*—All corporations operating railroads in this State are made common carriers by provision of statute. An averment that a corporation is engaged in operating a line of railroad is equivalent to an averment that it is a common carrier.

SAME.—*Oral Agreements.—Merger of in Written Contract.*—All antecedent and contemporaneous oral agreements of the parties are conclusively presumed to be merged in a written contract covering the subject-matter, when one is made. This presumption is applicable to the contracts of carriers.

SAME.—*Time of Shipment.—Obligation of Carrier as to.*—Where the contract of a carrier for the transportation of goods is silent with reference to the time of shipment, the law imports into the contract an obligation to ship within a reasonable time after the goods have been delivered for that purpose, and this element becomes a substantial provision of the contract, as much as if it had been expressly written in it, and its effect can not be changed, altered or modified by parol. *Cincinnati, etc., R. W. Co. v. Case*, 122 Ind. 310, distinguished.

SAME.—A railroad company is bound to transport live stock within a reasonable time after receiving it, but it can not be said as a matter of law that this means that the shipment must be made on the first train leaving after the property has been delivered for transportation.

PLEADING.—*Complaint.—Must Proceed on Definite Theory.*—Every complaint must be construed with reference to the general theory upon which it proceeds, and its legal value estimated accordingly.

From the Allen Circuit Court.

*J. Brackenridge,* for appellant.

*H. Colerick* and *W. S. Oppenheim,* for appellees.

CRUMPACKER, J.—Clark and Stanley sued the Pennsylvania Company, as a common carrier, for an alleged breach

of special contracts for the shipment of sixty head of cattle from Columbia City, Indiana, to Chicago, Illinois.

A demurrer to the complaint was overruled and exceptions duly saved. An answer was filed and the cause was submitted to the court and resulted in a finding and judgment for the plaintiffs below.

The sole question raised by the record relates to the sufficiency of the complaint. Excepting title and caption the complaint is as follows :

" The plaintiffs complain of the defendant and say that on the 24th day of July they were partners engaged in the business of purchasing cattle and shipping and selling said stock in the city of Chicago, Illinois, and other markets of the country, which fact was well known to the defendant; that on said day the defendant was a corporation, operating the Pittsburgh, Fort Wayne and Chicago Railway, a railroad running from the city of Pittsburgh, Pennsylvania, to the city of Chicago, Illinois, passing through the cities of Fort Wayne, Allen county, Indiana, and Columbia City, in said State; that on said 24th day of July, 1888, the plaintiffs had sixty head of cattle at said Columbia City, which they informed the defendants they desired to be shipped to the city of Chicago, Illinois, to arrive there in time for the morning market of July 25th, and that to have the same taken on the evening freight train leaving said Columbia City about six P. M., and which said train would land the cattle aforesaid at the union stock yards in Chicago at about seven o'clock A. M. on July 25th, as other previous shipments had been made by defendant for plaintiffs; that the defendant well knowing plaintiffs' business, and the importance to them of having said stock at Chicago at said time, agreed with plaintiffs to haul said cattle on said train and deliver the same at said union stock yards on the morning before nine o'clock A. M. of said 25th day of July, and had the plaintiffs sign and enter into the three several contracts, herewith filed, marked 'Exhibits A,' ' B ' and ' C '; that plaintiffs per-

formed all and each of the several obligations therein mentioned, and had said cattle loaded on cars long before the arrival of said freight (train) which was to haul the same; but that the defendant, without any fault or negligence on plaintiffs' part, but wholly through the negligence and fault of the defendant, and without any reason or cause therefor, negligently and carelessly failed to carry said cattle on said train and did not attempt to carry the same from said Columbia City until the third regular freight train thereafter, leaving Columbia City at or about three o'clock A. M. on the 25th day of July, 1888; that because of said unreasonable delay in attempting to transport said cattle, through defendant's default and neglect, as aforesaid, for which there was no reason or excuse, said cattle were not delivered in said union stock yards at Chicago, where consigned, until after three o'clock P. M. of said 25th day of July, and after the closing of the market of the day of July 25th, which said market is open only between the hours of nine o'clock A. M. and three o'clock P. M. on all days, as was well known by defendant, when the same could not be sold until the next day; that the market price on July 25th was fifty cents per hundred pounds higher than on July 26th, when said cattle were sold, and that the same would have been sold on July 25th at said higher price had it not been for the fault and negligence of the defendant aforesaid; that said cattle weighed 85,000 pounds, and were worth six cents per pound on said 25th day of July. The plaintiff lost by said neglect and failure of defendants the sum of $425.50 on said stock, by reason of said difference in the market value of said cattle, and loss of weight in said cattle of 15,000 pounds and cost of keeping the same, all of which occurred without any fault or negligence on plaintiffs' part, but was wholly the default and negligence of defendant. Wherefore plaintiffs demand judgment for $450, and all other proper relief."

There were three car loads of cattle, and a contract was entered into for each load. These contracts are precisely

alike in terms, and are all set out with the complaint. The following is a copy of them:

"12–87.

" ' B.'              W.        Manifest No.   .   .   .

" Special Notice to Shippers of Live Stock Over the Lines of the Pennsylvania Company and to Agents for the Company.

"All persons in the service of the Pennsylvania Company are expressly forbidden to transport, or receive for transportation, over the lines operated by the Pennsylvania Company, any live stock of any description, from any individual, or the agents of any other company, unless the person shipping such live stock signs a written agreement to load, unload, feed, water, and to attend to the stock himself, and assume all the risks of transportation, or else to pay the company as the price of transportation, the full rates, as per local tariff, in case the company carry the live stock without such special contract.

" CONTRACT.

" The undersigned hereby contracts, agrees and binds himself and for the owners of the cattle shipped in car Nos. P., C. & St. L. 45, 25, on the P., F. W. & C. R. R., at Columbia City station on the 24th day of July, 1888, to be transported to Union Stock Yds., by the Pennsylvania Company, in consideration of the said company agreeing to transport the said 20 cattle at the special rates and conditions given in local tariff, to load, unload, feed, water, and attend to the stock himself, and, having examined the cars, to assume all risks of transportation, both as to the stock and the individual who may travel with such stock to attend to it, being all risks arising from any defect in the body of the cars, imperfect doors and fastenings, overloading, or from vicious and restive animals, delays, and all risk of the escape and robbery of any portion of said stock, or of loss and damage from any other cause or thing not resulting from defective trucks, wheels, or axles. And it is hereby acknowledged that 24000

pounds is the maximum weight allowed by the Pennsylvania Company to be loaded on any one car. It is agreed that the Company shall not be responsible for any delays at terminal points, nor for delays at points where stock is to be delivered to connecting lines, caused by their refusal or inability to receive it after a tender of delivery has been made by this Company.

"Signed at Columbia City this 24th day of July, 1888.

"H. F. CLARK & STANLEY.

"Witness :,          FRANK M. DOUGLAS.

"NOTE.—In case of extra valuable stock being shipped (with permission of the assistant general freight agent), and released at the valuation of ordinary stock, the amount of the agreed valuation must be written above the signature before the contract is signed.

"NOTE.—In every case where such an agreement is not signed, first-class rates must be charged, as per local tariff.

"☞Agents will endorse all contracts as indicated by the blanks on the back, and forward the same to the auditor of freight receipts with the duplicate manifest; when this is omitted to be done, the agents will be liable for the difference between the rates charged and full tariff rates."

Counsel for appellant contends that the complaint is fatally defective because : 1. It does not allege that the appellees were the owners of the cattle. 2. It does not allege, in terms, that the appellant was a common carrier. 3. Because the complaint counts upon the breach of an alleged parol arrangement for the shipment of the cattle, and it appears that they were shipped under written contracts, silent upon the subject of which the breach is predicated.

There is no merit in the first and second grounds of objection. It fairly appears from the complaint, as a whole, that the appellees were the owners of the stock, and no consignee being named in the contracts, it will be presumed that the shipment was to be made to them.

All corporations operating railroads in this State are made common carriers by provisions of the statutes. So an averment that a corporation is engaged in operating a line of railroad is equivalent to an averment that it is a common carrier. Section 3925, R. S. 1881.

The third objection can not be disposed of so summarily. The complaint alleges a parol arrangement between the parties, by the terms of which the appellant engaged to ship the stock upon a certain freight train, which was to have left Columbia City at 6 o'clock P. M., on July 24th, and would have reached the Union Stock Yards at Chicago in time for the morning market on the day following. Then it is averred that special contracts in writing were entered into, and these are utterly silent as to the particular time or train upon which the stock was to be shipped, or when it was to be delivered at its destination. The breach of duty complained of was that while the stock was delivered to the appellant in due time, it carelessly and negligently failed and refused to ship it on said train, and, by way of aggravation of the breach, it is further charged that the appellant failed to ship the cattle until the "third regular freight train thereafter," which left Columbia City at 3 o'clock A. M., on the 25th of July, and that the cattle did not reach their destination in time for the market on the 25th. Every complaint must be construed with reference to the general theory upon which it proceeds, and its legal value estimated accordingly. *First National Bank of Indianapolis* v. *Root*, 107 Ind. 224; *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13.

In the case before us the complaint very clearly proceeds upon the theory that the terms of a parol contract for the shipment of the stock had been violated. The failure to ship on the particular train was, as a matter of law, no violation of any obligation assumed by the appellant under the written contracts, because there were no provisions in such contracts requiring it to ship the stock on any particular train.

It is an elementary rule of the law of contracts, that all

antecedent and contemporaneous oral agreements of the parties are conclusively presumed to be merged in a written contract covering the subject-matter, when one is made ; and this law is applicable to the contracts of carriers. *Louisville, etc., R. R. Co.* v. *Wilson,* 119 Ind. 352 ;. *Snow* v. *Indiana, etc., R. W. Co.,* 109 Ind. 422.

Under the operation of this rule the parol arrangement mentioned in the complaint was entirely superseded by the written contracts, and viewing them as we must do, as furnishing the sole basis of the rights and liabilities of the parties, the complaint does not state a cause of action.

The law forms an important element of every contract, and where the contract of a carrier for the transportation of goods is silent with reference to the time of shipment, the law imports into the contract an obligation to ship within a reasonable time after the goods have been delivered for that purpose, and this element becomes a substantial provision of the contract, as much as if it had been expressly written in it, and its effect can not be changed, altered, or modified by parol.

Appellees' learned counsel refer to the case of *Cincinnati, etc., R. W. Co.* v. *Case,* 122 Ind. 310, as supporting the judgment of the trial court, but an analysis of that case discloses the fact that the complaint declared upon the breach of a written contract for the shipment of stock, upon the ground that the shipment had not been made within a reasonable time, and the court very properly held that from the facts pleaded, as a matter of law, the shipment was delayed for an unreasonable time. While in the case before us, as has been observed, the complaint declares upon the breach of a parol agreement which appears to have been subsequently merged in the written contracts, and as a consequence could furnish no measure of liability.

The judgment is reversed, with costs, with instructions to the court below to sustain the demurrer to the complaint.

Filed April 30, 1891.

## ON PETITION FOR A REHEARING.

CRUMPACKER, J.—A petition for a rehearing is filed on behalf of appellees, upon the ground that this court misconceived the theory of the complaint. It is very earnestly insisted that the complaint is based upon the written contracts exclusively, and that the parol arrangement set out is pleaded as matter of inducement. It is averred in the complaint that the appellant promised to ship the stock on a certain train, and the breach of obligation is alleged to be its careless and negligent failure to ship it on such train.

We are unable to discover any such agreement in the written contracts, nor can these averments be regarded as matter of inducement.

It is contended, however, that the law made it the duty of the appellant to ship the stock on the first train leaving after its delivery. We can not concur in this proposition. A railroad company is bound to transport property within a reasonable time, but it can not be said, as a matter of law, that this means that the shipment must be made on the first train leaving after the property has been delivered for transportation.

If the complaint should be construed upon the theory contended for by appellees' counsel, the result would be the same, because there is no allegation of an unreasonable delay in making the shipment, nor are facts stated from which the law could declare the shipment to have been unreasonably delayed.

In their brief upon the petition counsel say: "We earnestly insist that it is not fair to the parties, when both admit that the complaint is founded on the written contracts, for this court to go outside of both briefs, discover a new theory and reverse the cause, although it is admitted that the law is with appellees, if their counsel's theory had only been right. Even if the complaint is susceptible of two theories, one on an oral and one on a written contract, if both parties and the

court below treat it as on a written, it is not fair that this court should now adopt a contrary theory."

We are not advised upon what theory the trial court treated the complaint except the information contained in appellees' brief, but we do understand counsel for appellant to contend for the construction we gave it in the original opinion. It is said in the original brief in appellant's behalf: " The appellees further seem to rely, for their right to recover, upon facts outside of the bills of lading, and to that end aver in the complaint, in substance, that on the 24th day of July the plaintiffs had sixty head of cattle at said Columbia City, which they informed defendant they desired to be shipped to the city of Chicago, to arrive there in time for the morning market, on July 25th, and that to have the same taken on the evening freight train leaving Columbia City about 6 P. M., etc.; that the defendant, well knowing plaintiffs' business, etc., *agreed with plaintiffs to haul said cattle on said train, and deliver the same at said Union Stock Yards, on the morning before* 9 o'clock A. M. of said 25th of July, and had the plaintiffs sign and enter into their several contracts filed, marked ' Exhibits A,' ' B,' and ' C.' This agreement, however, is no where found contained in either of the bills of lading filed with the complaint, and described as ' Exhibits A,' ' B,' and ' C.' On the contrary, these contracts merely show that the cattle were received to be transported to the Union Stock Yards at Chicago, in the usual manner. There is no agreement, or stipulation, to carry them on any particular train, or at any particular time, or to land them in Chicago, in time for the stock market of the 25th of July, or any other day, nor could the plaintiff be permitted to show, or prove, upon the trial, the facts thus averred in his complaint, or to avail himself of them in any way, inasmuch as they are inconsistent with the contract contained in the bills of lading under which the cattle were carried."

We understand this interpretation of the complaint to be

in harmony with the construction given it in the original opinion, but however this may be, the complaint is insufficient upon any theory that can be accorded it.

The petition is overruled.

Filed June 25, 1891.