## Chicago, Indianapolis & Louisville Railway Company v. Hostetter.

[No. 21,183. Filed May 1, 1908. Rehearing denied December 17, 1908.]

1. PLEADING.— *Complaint.— Railroads.— Passengers.—Contracts.— Torts.*—A complaint for damages against a railroad company, alleging negligence, sounds in tort, although it sets out a bill of lading for the shipment of·a car-load of live stock and alleges that the plaintiff by virtue thereof and by defendant's custom, was a passenger, when injured in such car. p. 475.

2. SAME.— *Complaint.— Railroads.— Bills of Lading.— Carrying Stockmen.—Custom.*—A complaint for injuries to a man in care of poultry on a freight-car, alleging that the bill of lading set .out was treated, by the custom of. defendant, as authorizing and· requiring a caretaker to accompany the car, is assumed, without decision, as sufficient, such custom entering into and becoming a part of the contract evidenced by such bill. p. 476.

3. RAILROADS.—*Transportation of Live Stock.—Care.—Contracts.—* At the common law it was. the duty of the carrier of live stock

VOL. 171—30

to care for the same, but by contract this duty might be limited by a requirement that a caretaker furnished by the shipper should accompany such stock. p. 477.

4. RAILROADS.—*Transportation of Live Stock.—Caretakers.—Consideration.*—The consideration for the transportation of a caretaker for live stock shipped over a railroad, is the reduction in the shipping rate by reason of the. shipper's furnishing such caretaker. p. 477.

5. SAME.—*Transportation of Live Stock.—Care.—Presumptions.—Contracts.*—In the absence of any provision to the contrary a bill of lading for the transportation of live stock imports that the carrier will care therefor, the common-law duty of the carrier constituting an essential element of such bill. p. 477.

6. NEW TRIAL.— *Evidence.— Railroads.— Custom.—Transportation of Live Stock.—Caretakers.*—Where the complaint alleged that it was defendant railroad company's custom to carry a caretaker with car-load shipments of poultry regardless of any mention thereof in the bills of lading, and the evidence showed that caretakers were invariably provided for in such bills, a verdict for the plaintiff caretaker, who was injured by defendant's alleged negligence, was unsupported, the bill in the case at bar containing no such provision. p. 478.

7. TRIAL.—*Recovery.—Allegations.*—The plaintiff must recover according to his allegations. p. 481.

8. SAME.—*Variance.*—Where a complaint is unproved in its substance and general scope, there is a failure of proof, and not a variance. p. 481.

9. RAILROADS.—*Caretakers for Live Stock.—Bills of Lading.*—A caretaker who enters a freight-car to care for live stock, and who has a bill of lading for such stock, which bill makes no mention of his right to accompany such car, is presumed to know that he has no legal right to accompany such car, and, therefore, that he does not become a passenger by boarding such car. p. 481.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Newton J. Hostetter against the Chicago, Indianapolis & Louisville Railway Company. From a judgment for plaintiff, defendant appeals. Appealed from the Appellate Court under §1394 Burns 1908, cl. 3, Acts 1901, p. 565, §10. *Reversed.*

*E. C. Field, H. R. Kurrie* and *Thomas & Foley,* for appellant.

*U. C. Stover* and *Crane & McCabe,* for appellee.

JORDAN, J.—Appellee sued to recover for personal injuries attributed to the negligence of appellant's servants. The complaint consists of two paragraphs, to each of which appellant unsuccessfully demurred for want of sufficient facts to constitute a cause of action. An answer in five paragraphs was filed, the first of which was the general denial. A demurrer by appellee was sustained to the second and fifth paragraphs of this answer. Reply, the general denial; trial by jury; verdict in favor of appellee for $7,000. Along with this general verdict answers were returned by the jury to a number of interrogatories. Appellant unsuccessfully moved for judgment in its favor upon these findings. It also moved for a new trial, which motion was denied, and judgment was rendered upon the verdict.

The errors of the Montgomery Circuit Court assigned in the appeal to the Appellate Court are: (1) Overruling the demurrer to each paragraph of the complaint; (2) overruling the motion for judgment on the interrogatories; (3) overruling the motion for a new trial. Proper errors are assigned in the appeal taken from the Appellate to the Supreme Court.

We state so much of the first paragraph of the complaint as, appellee asserts, establishes that, at the time he sustained the injuries of which he complains, the relation of carrier and passenger existed between him and appellant. The paragraph alleges that "the defendant is now, and for several years last past has been, a railway company incorporated under the laws of the State of Indiana, and during such time has owned and operated a railway as a common carrier of passengers and freight for hire between Chicago, Illinois, and Louisville, Kentucky, through Montgomery and other counties in Indiana; that for six years prior to and throughout the month of January, 1902, plaintiff was in the employ of Havens Brothers, a firm of poultry dealers, who resided and had their principal place of business in the town of Ladoga, Montgomery county, Indiana, and he had

the care of and charge of the shipment of live poultry which
said firm shipped in car-load lots from various stations on
defendant's railway to New York and eastern markets; that
during all said time it was and continued to be the usage
and custom of said Havens Brothers and of the defendant,
and it was and continued to be necessary, in the shipment
of said live poultry over defendant's said road, to have a
man accompany each car-load of poultry, in charge thereof,
to feed, water, watch, protect and care for the same *en route,*
and it was necessary and proper for the care of said poultry
to take along therewith and in the same car a large supply
of food and water for said poultry, and constantly to guard,
watch, feed and water the same, and to protect it from
theft and injury, and said poultry cars were so arranged as
to afford room for feed and water, and for the attendant
in charge thereof; that it was, during all of said time, the
usage and custom of said Havens Brothers and of said de-
fendant, and it was necessary and proper, to have said man
in charge occupy the car with said poultry, and during all
said time this plaintiff was and continued to be the man so
employed by said Havens Brothers and carried by the de-
fendant as the man in charge of said shipments of live poul-
try, and according to said usage and custom this plaintiff
did, during all of said time, accompany said shipments and
ride in the car with said poultry, which he did with the
knowledge and consent of the defendant; that during all of
said time the plaintiff accompanied more than 240 car-loads
of poultry, one car-load at a time, more than half of the
same being over defendant's said railroad, and rode in the
car therewith each time, with the knowledge and consent of
the defendant; that at no time during all said years did the
defendant give to the plaintiff any notice whatever that he
should not ride in the poultry car with the poultry so
shipped and in his charge, but at all times consented there-
to; that during all said time it was the usage and custom
of said defendant and of said Havens Brothers, in making

up any car-load of poultry intended for shipment to said eastern markets as aforesaid, partially to load said car with poultry at Gosport, or some other station on defendant's said road, south of said Ladoga, and to make out bill of lading as for a full load, making a memorandum on such bill of lading directing that additional poultry should be loaded in said car *en route* at any station named, and such car should be set off at Ladoga to finish loading the same, and it was the custom to set such car off at said Ladoga, pursuant to such memorandum and directions, for the completion of such load, and it was the usage and custom of the defendants, during all said time, when notified that any such car-load was so completed at said Ladoga, to cause the first available freight-train and freight-train crew, passing northward through said Ladoga over its said road, to pick up said car so loaded, with this plaintiff in charge, and in said car with said live poultry, and attach the same to the forward end of said freight-train next to the locomotive, and carry the same over defendant's said road to Crawfordsville Junction, in said county, and there leave the same to be picked up and carried forward toward its destination by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, whose railway connects with defendant's said road at said Crawfordsville Junction. * * * The plaintiff avers that on January 31, 1902, pursuant to the usages and customs aforesaid, which heretofore and at that time existed between the defendant and said Havens Brothers as aforesaid, the defendant, at the request of said Havens Brothers, furnished a certain kind of freight-car, known as a poultry car, on its tracks at its station in Gosport, Owen county, Indiana, where the same was to be partially loaded with live poultry, and forwarded thence on defendant's said road with directions to stop the same at said Cloverdale station and load poultry thereon, and to set-said car off at said Ladoga, where the same was to be further loaded to completion with live poultry and forwarded thence to Crawfordsville,

to be there billed through to its destination in New York City over said Cleveland, Cincinnati, Chicago & St. Louis railway, all of which the defendant well knew and understood; that on said January 31, 1902, the defendant caused its agent at said Gosport station, pursuant to the usages and customs aforesaid, to issue its duplicate bills of lading for said car so loaded and to be loaded as aforesaid, which bill of lading is in the words and figures following, to wit: [Here the bill of lading is incorporated into and made a part of the complaint.]'' The complaint further alleges that said bill of lading was delivered to said Havens Brothers, and that the defendant wholly failed to cause any indorsement to be made thereon in the nature of a pass, or otherwise to give this plaintiff or said Havens Brothers, or any one else for him or them, any other evidence of his, plaintiff's, right, or of the right of any one whatsoever, to be carried or transported over defendant's said road as the man in charge of said poultry, so to be shipped in said car, than said bill of lading, and the defendant well knew that said Havens Brothers and this plaintiff understood, and had by defendant been given to understand, that such bill of lading should be accepted and treated by the defendant and its agents, servants and employes as full and ample authority for, and evidence of, the right of this plaintiff, as the man in charge of such shipment of poultry, to be carried therewith, in consideration of the payment of the freight charges fixed and provided in the official freight classification and tariffs of freight rates promulgated, published and in force, as hereinafter alleged and set forth; that at said time, and for several years prior thereto, there were in full force and effect on defendant's said railroad and on all connecting lines of railroad over which said Havens Brothers made shipments of live poultry as aforesaid, certain official freight classifications and tariffs of freight rates chargeable, which classifications and tariffs were duly published and promulgated, and formed the basis of all contracts for ship-

ment of freight made by and between said Havens Brothers
and said defendant during all said time in which they were
engaged in making said shipments, and that said freight
classifications and tariffs provided that the freight rates
chargeable thereunder included the transportation of a man
in charge thereof; that said poultry car was, pursuant to
said arrangements, and in conformity to the usages and cus-
toms aforesaid, partly loaded with live poultry at Gosport
and *en route* at Cloverdale and left on the side-track at said
Ladoga for completion of the load, and on said day said load
was completed at Ladoga and said car was made ready for
shipment and defendant was duly notified thereof; that for
said shipment of said car-load of poultry so loaded at Clover-
dale and Ladoga, as aforesaid, to its destination in New
York City, the defendant charged the regular tariff rate
of freight as published and in force on defendant's road
for that class of property as aforesaid, which included trans-
portation of a man in charge, and said Havens Brothers
paid said rate therefor; that at about — o'clock p. m. on
January 31, 1902, said car-load of live poultry, so partly
loaded at Gosport and Cloverdale as aforesaid, was standing
on the side-track at said station of Ladoga, loaded with said
live poultry in coops, and with a large supply of feed and
water for the same, ready and waiting to be carried forward
on defendant's said road, according to said bill of lading
and said usages and custom; that at said time it was very
dark, and there was ice and snow on the ground and along
defendant's track; that this plaintiff then and there held
said bill of lading and was ready and waiting to go with
said poultry as the man in charge, but that he did not know
and had no means of knowing what train would pick up
said car, until the same came in, and, having orders so to
do, attached the locomotive thereto, and after seeing that
done the plaintiff would not have had time or opportunity
to reach such train and get aboard the same otherwise than
by getting into said poultry car; that while so waiting on

said night one of defendant's freight-trains, drawn by a
locomotive engine, coming from the south, stopped at a point
south of said bridge and about 100 rods south of said La-
doga station, and, having disconnected the locomotive there-
from, defendant, by its servants, left said train standing on
the track and ran said locomotive down to said poultry car
and, attaching the locomotive thereto, pushed said car back
to said train so standing on the track south of said bridge;
that when the plaintiff saw that the locomotive was about
to connect said car with said train he entered said car, with
the knowledge and consent of the defendant, and remained
therein until after the happening of the injuries hereinafter
complained of; * * * that when the plaintiff entered
said poultry car he, as the agent of said Havens Brothers,
consignors, and as the caretaker and man in charge, had in
his possession said bill of lading, issued as aforesaid by said
defendant's station agent at Gosport, which had been deliv-
ered to him by said Havens Brothers, as his evidence of his
right to transportation as such caretaker in charge of said
poultry, and he was then and there a passenger for hire and
entitled to protection as such at the hands of the defendant.''

Here follow averments going to show the negligence of
appellant's servants in uncoupling and leaving said poultry
car on the track in the darkness of the night without leav-
ing any one in charge thereof, and without placing a signal-
light to indicate to the engineer the presence of said car, on
account of which negligence the locomotive collided with
said poultry car in which plaintiff was in charge of the poul-
try, which collision resulted in the injuries of which he com-
plains. The complaint then alleges ''that at no time during
all said time did the defendant ever issue to the plaintiff
in charge of said shipments of poultry any pass, but some-
times an indorsement or memorandum was made on the bill
of lading, in substance: 'Pass man in charge,' or 'Pass one
in charge,' but during said time it was the general usage and

habit of the defendant to issue a bill of lading for each carload of poultry so shipped by said Havens Brothers over defendant's said road, without any such indorsement or memorandum thereon, and to deliver the same to said Havens Brothers, to be by them delivered to the plaintiff as the man in charge, and to carry the plaintiff in such poultry car as the man in charge, without other evidence of his right to ride in such car or be carried on such train with the poultry, other than such bill of lading, and defendant never, at any time, notified this plaintiff that such usage and habit would be discontinued, or that this plaintiff should not take passage on and in any such car of poultry, to be transported and carried therein as the man in charge; * * * that said car was especially built for a poultry car, and was used by defendant in the business of a common carrier; that the coops in said car were securely built into said car, and were securely fastened by heavy braces and iron clamps in the usual method of loading said poultry car, and said car at such time and place was a safe and secure place for plaintiff to ride in, and, in the ordinary and usual operation of a freight-train, such a poultry car so loaded is a safe and secure place for a caretaker in charge of said car to ride in while caring for said poultry; that the defendant, as a common carrier, would not and did not assume any responsibility whatever with respect to feeding, watering, guarding, protecting or watching said poultry, but provided such poultry cars, so arranged as to accommodate necessary feed and water for such poultry, and with suitable space for a caretaker to ride in such car, and permitted and expected the consignor to furnish such caretaker, and, as an inducement so to do, provided in its said freight classification and tariff of rates that such caretaker would be carried without charge, other than the freight rate chargeable for the carriage of said poultry.''

The bill of lading set forth and made a part of the com-

plaint issued by appellant's freight agent at Gosport, Indiana, to Havens Brothers, the shipper, is in part, as follows:

"Bill of Lading, No. 91.        Gosport, 1/31/1902.

Received from Havens Brothers by the Chicago, Indianapolis & Louisville Railway Company the property described below, in apparent good order, * * * consigned and destined as indicated below, which said company agrees to carry to said destination if on its road; otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, in consideration of the rate of freight hereinafter named as to each carrier, on all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, indorsed hereon, and which are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable. [Here follow numerous conditions upon which the bill of lading declares the property is received for transportation by the Chicago, Indianapolis & Louisville Railway Company. Among these conditions are the following:] No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto by causes beyond its control or by floods, etc. The owner or consignee shall pay the freight at the rate hereon stated, and all other charges accruing on said property before delivery," etc.

This bill of lading is entirely silent in respect to the shipper's assuming the care and feeding of said poultry during its transportation, or that a man is to be sent as a caretaker thereof, or as to any direction to pass any one in charge of said poultry. There is nothing in said bill of lading in any manner stipulating that appellant was to be relieved of caring for, feeding and watering said poultry during the transportation thereof.

The second paragraph alleges that the defendant is a common carrier, etc.; that it is engaged in operating a railway as a common carrier of passengers and freight through

Montgomery and other counties of the State of Indiana; that on January 31, 1902, the defendant received for pay a sum of money, in consideration whereof it agreed to carry plaintiff as a person in charge of a car-load of poultry then in a freight-car, as a passenger in said freight-car on said day at the station of Ladoga. It is alleged that plaintiff entered said car as a passenger for hire and took charge of said poultry, and afterwards, while so in said car and in charge of said poultry, on said day and at said station of Ladoga, the defendant, through its agents and servants, so carelessly and negligently operated the engine on said train that said engine was carelessly and negligently run into and collided with the car in which plaintiff was riding, and he was thereby thrown down in said car and injured; that he was injured without any fault or negligence on his part, but wholly through the fault of defendant in the operation and management of said engine and the train on which plaintiff was riding, by reason whereof plaintiff has been damaged, and he demands judgment, in the sum of $15,000.

Under the averments of the first paragraph of the complaint the pleader seeks to show that the relation of passenger and carrier, at the time appellee was injured,

1.  existed between the latter and appellant. While the bill of lading issued by the railroad company to Havens Brothers, the shippers of the poultry in question, is set out and made a part of this paragraph, nevertheless it is apparent that appellee does not base his right of action upon this contract. The action sounds in tort, and is predicated upon the violation by appellant of a duty which, under the law, as a carrier of passengers for hire, it owed to appellee. It is evident that the only purpose of the pleader in making the bill of lading a part of the paragraph was to aid or support the averments thereof in disclosing that appellee, at the time of the accident by which he was injured, was a passenger for hire and entitled under the law to protection as a passenger. *Pittsburgh, etc., R. Co.* v. *Higgs*

(1906), 165 Ind. 694, 4 L. R. A. (N. S.) 1081; *Lake Shore, etc., R. Co.* v. *Teeters* (1906), 166 Ind. 335, 5 L. R. A. (N. S.) 425; *Flint & Walling Mfg. Co.* v. *Beckett* (1906), 167 Ind. 491.

Briefly stated, it may be said that the contention of appellant's counsel is that the facts alleged in the first paragraph of the complaint are not sufficient to establish 2. that appellee, at the time he was injured through the alleged negligence of appellant's servants, was a passenger, and as such was entitled to the protection which the law exacts; that inasmuch as his right to be transported along with the poultry shipped by the firm of Havens Brothers was not in any manner provided for in the bill of lading set out and made a part of the pleading, he was not, therefore, rightfully upon appellant's freight-train as a passenger, and the railroad company owed him no duty as such. It is argued that all oral agreements or understandings leading up to the issuing of the bill of lading must be considered and held to be merged therein, and that the bill of lading cannot be contradicted or modified thereby. On the other hand, counsel for appellee, while conceding that the bill of lading itself does not show that the shipper had assumed the responsibility of caring for the poultry while *en route,* nevertheless insist that the shipping contract must be read in the light of the usage set out in the pleading, and that because appellee had been, in the previous shipments, transported by appellant as a caretaker of the poultry shipped by Havens Brothers, without any stipulation or provision in the bills of lading to that effect, it must be held in this case that the real understanding between the railroad company and said firm of Havens Brothers was that the latter was to assume the duty of caring for the poultry, and that appellee, as the employe of the shipper, should, upon the occasion in question, accompany the poultry as a caretaker, as he previously had done, and be given transportation, in consideration of the freight paid by his employer to appellant,

It is manifest, in view of the allegations of the first paragraph of the complaint and instructions given by the lower court to the jury, that the case was tried and submitted upon the theory that if appellant, as a common carrier of freight, and Havens Brothers, as the shipper of the poultry, had dealt with each other, in the shipment in question, in respect to the previous usage or custom, as alleged in the complaint, then such usage would form a part of the bill of lading issued for the shipment of the poultry in the case at bar, unless appellant had given notice to Havens Brothers that such usage would be continued no longer. Under the common law, in the shipment of live stock by a common carrier, the duty to give it necessary care and attention during its transportation devolves upon the carrier and not upon the shipper. The carrier, however, may, to an extent at least, absolve itself from this duty or responsibility by a provision in the bill of lading, or shipping contract, to that effect, and thereby impose such duty or responsibility upon the shipper, provided the latter can be said to agree to such provision in the shipping contract. *Terre Haute, etc., R. Co.* v. *Sherwood* (1892), 132 Ind. 129, 17 L. R. A. 339, 32 Am. St. 239; *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, 63 L. R. A. 948; *Lake Shore, etc., R. Co.* v. *Teeters, supra;* 5 Am. and Eng. Ency. Law (2d ed.), 436, 439; 2 Hutchinson, Carriers (3d ed.), §634.

As a general rule the consideration for the assumption of the duty by the shipper to care for live stock in transit is the reduction in the shipping rate by the carrier or the transportation of a caretaker furnished by the shipper to accompany the stock. 2 Hutchinson, Carriers (3d ed.), §640.

In the absence of a statutory provision or anything in the bill of lading to the contrary, this provision of the common law is imported into and becomes a part of the bill of lading, or shipping contract. As in other contracts the law always constitutes an important ele-

ment in every bill of lading, and where such bill as the one herein is silent in respect to the duty of caring for live stock while in transit, the common law relative thereto is imported into the bill and becomes a provision therein, in like manner as though it had been expressly stipulated in the contract that such duty should devolve upon the carrier. 4 Elliott, Railroads (2d ed.), §1423; *Snow* v. *Indiana, etc., R. Co.* (1887), 109 Ind. 422; *Louisville, etc., R. Co.* v. *Wilson* (1889), 119 Ind. 352, 4 L. R. A. 244; *Pennsylvania Co.* v. *Clark* (1891), 2 Ind. App. 146.

Conceding, as we may, without deciding, that the first paragraph of the complaint is sufficient to state a right of action in favor of appellee, or, in other words, that the usage, as alleged in the pleading, by which Havens Brothers and appellant were controlled in the shipment of poultry prior to the happening of the injury of which appellee complains, entered into and formed a part of the bill of lading in question and thereby the duty to care for the poultry in controversy was assumed by Havens Brothers, the shippers, and therefore, they were authorized to place appellee, their employe, in the car in which the poultry was shipped, as a caretaker, and hence he was upon said car as a passenger for hire, we pass to the consideration of the evidence and the answers to certain interrogatories to the jury.

By the answers to the interrogatories it is fully disclosed that the general verdict is based upon the first paragraph of the complaint, and unless it can be said that the 6. facts proved by the evidence sustain the cause of action alleged in that paragraph, the appellee is not entitled to a recovery in this action. The undisputed evidence in the case, as well as the answers to interrogatories, establishes that, prior to the time appellee was injured, Havens Brothers had made numerous shipments of poultry over appellant's railroad. The car containing the poultry was generally partially loaded and billed from Gosport, Indiana, and permission was given by appellant company for

this car to be left at other points upon its road between Gosport and Ladoga for the purpose of taking on additional poultry. The car would then be taken to Ladoga, and from there, over appellant's road, to Crawfordsville Junction, and at that point turned over to the Big Four railroad company for transportation on to New York City. The bill of lading incorporated in the first paragraph of the complaint and in evidence in this case was made out by appellant's shipping. agent at Gosport, Owen county, Indiana, and there delivered to the agent or representative of Havens Brothers. At the time the poultry was billed, appellant's agent at Gosport, before making out the bill of lading, inquired of Havens Brothers' agent "if there was any one with the car," and was informed that there was not. The bill of lading was thereupon issued and delivered to the representative of said shippers, without making any provision therein for the transportation of appellee, or any one, to accompany the poultry in transit. The poultry car, upon which appellee was at the time he sustained the injuries of which he complains, was partially loaded with poultry at Gosport on January 31, 1902, at the time the bill of lading in controversy was issued. This car, after being partially loaded at that station, was run to Cloverdale, a station on appellant's road, where additional poultry was taken aboard. It was then run to Ladoga, and left there for the purpose of completing the loading of the poultry. At the latter station appellee, an employe of Havens Brothers, the shippers, went aboard this car for the purpose of exercising the duties of a caretaker in respect to the poultry. When he boarded the car he had in his possession the bill of lading which had been delivered to him by said shipper. It appears that no one was in charge of the car as a caretaker of the poultry between Gosport and Ladoga. This car was handled by appellant between Gosport and Ladoga under the bill of lading made out by appellant's agent at Gosport.

The evidence establishes, and the jury specially found,

that no other additional or different contract was made by the appellant, in respect to the movement of said poultry car over any part of its said line, except the bill of lading in question. The jury also found that when the bill of lading was issued by the defendant's agent, as hereinbefore stated, said agent was advised by the agent of Havens Brothers that there was no man in charge of the car and no request was made for provision to be made in the contract for Havens Brothers to send a man in charge of the poultry. In contracting for all the shipments of poultry made by said firm in 1901 it was provided in the shipping contracts that a man in charge of said poultry would be passed, and in this manner said firm specially contracted with appellant for the free passage of a man who was to be in charge of the poultry and have the care thereof. During the period covered by the shipments of poultry over appellant's railway, prior to the time of appellee's injury, about 240 shipments were made. All the bills of lading issued in these shipments contained a provision which read: "Pass man in charge," except two, which read: "Pass Newt. Hostetter"—appellee herein—or: "Pass N. Hostetter."

Appellee, in these shipments, was the man placed in charge of the poultry by Havens Brothers, and his duties were to feed, water and care for the poultry in transit. In fact the evidence fully establishes that the authority of appellee to accompany the poultry as an employe of said firm of Havens Brothers, in all of the previous shipments made by it over appellant's road, was provided for in the bill of lading, or shipping contract, entered into between said firm and appellant company, and in no manner did appellee's right to transportation, as a caretaker of the poultry, in the previous shipments arise out of or depend upon the usage or custom alleged in the first paragraph of the complaint. It is manifest by the facts proved by the evidence that appellee's cause of action, as alleged in the first paragraph of his complaint, in its general scope and meaning, stands unproved. The

facts proved present a case materially different from that disclosed by the facts averred in the complaint. The facts proved, when tested by the authorities hereinbefore referred to, wholly fail to sustain appellee's right to be in the car in charge of the poultry at the time he was injured. In truth, the facts proved are clearly outside of those alleged in the complaint to establish appellee's right to be in the car in charge of the poultry at the time he was injured. The rule is firmly settled that the plaintiff must recover, if at all, upon the allegations of his complaint. Section 402 Burns 1908, §393 R. S. 1881, 1 Thornton's Civil Code, §168, provides that "When, however, the allegation of the claim or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance,  *  *  *  but a failure of proof." See *Jeffersonville, etc., R. Co.* v. *Worland* (1875), 50 Ind. 339; *City of Huntington* v. *Mendenhall* (1881), 73 Ind. 460; *Thomas* v. *Dale* (1882), 86 Ind. 435; *Cleveland, etc., R. Co.* v. *Wynant* (1885), 100 Ind. 160; *Cincinnati, etc., R. Co.* v. *McLain* (1897), 148 Ind. 188.

At the time appellee boarded the poultry car at Ladoga he was certainly admonished by the character of the car that it was not intended for the transportation of passengers. He knew that his right to accompany the poultry and be transported as a caretaker depended upon the contract between his employer and the railroad company. When he boarded the car he had in his possession the bill of lading. An inspection thereof would have fully disclosed that no provision whatever therein was made for his transportation by appellant or to authorize him as the employe of the shipper to accompany the poultry. While it is true, as insisted by his counsel, that he was not a party to this contract, nevertheless, so far as he bases any right thereon to be carried by appellant as a passenger, he

is bound by all of its express and implied provisions affecting such right. He had no greater or better claim to be carried by appellant over its road as a caretaker of the poultry than had his employer. As previously stated, whatever right he had in this respect depended upon the contract which Havens Brothers had with appellant company. *Cleveland, etc., R. Co.* v. *Henry* (1908), 170 Ind. 94.

There being a failure of proof to sustain material facts as alleged in the first paragraph of the complaint, appellee was not entitled to a recovery thereon. It follows that the trial court erred in denying the motion for a new trial.

Judgment reversed, with instructions to grant appellant a new trial.